Davis v. Adams.

sued.—Chandler v. Holloway, 3 Port. 17-23-4. The demurrer to the declaration was, it seems to me, improperly sustained.

WATTS & JACKSON, for the defendant.

## DAVIS *vs.* ADAMS.

1. Where one party contracts to sell, and the other to pay for goods on delivery, if both be present at the time and place agreed on, and are able to perform their respective undertakings, it is incumbent on him, who would put the other in default and enforce the contract,

to offer to perform his part of it; otherwise, the time will pass, and the contract be annulled, because neither has offered to execute it.

2. If the contract be to sell and deliver fifty bales of cotton, of the vendor's first gathering and packing, a tender of fifty-five bales of his first gathering and packing, with a proposal to the vendee to select fifty out of them, it not appearing that there is any material difference in the bales, either as to quality or quantity, is a substantial offer of performance.

3. In an action against a vendee for refusing to receive goods, agreed to be purchased by him at a specific price, the measure of damages is the difference between the price agreed to be paid, and the market value of the goods at the time of the breach.

4. If, in a contract for the sale and delivery of a certain number of bales of cotton, thereafter to be gathered and packed, the parties agree on the exact weight of the bales, a tender of bales, materially different as to weight from those agreed on, would not be a compliance with the contract; but if the contract is silent as to the weight, it will be infered that the parties intended the bales to be of the usual weight, and unless those tendered should so far exceed the usual weight, as to show that the vendor, in consequence of a change in price, had packed them heavier in order to gain an advantage over the vendee, the court could not undertake to say that they did not correspond with the contract.

5. Where parties contract in reference to a growing crop of cotton, without saying any thing as to quality, it is to be infered that they intend it to be of the quality usually produced in the region of country in which it is grown. Evidence, therefore, which tends to show that the cotton tendered, in compliance with the contract, corresponds in quality with the average crops of the neighborhood, is not irrelevant.

ERROR to the Circuit Court of Macon. Tried before the Hon. John J. Woodward.

ASSUMPSIT by the defendant against the plaintiff in error, on a special contract. The facts of the case are sufficiently noticed in the opinion of the court.

RICE, for the plaintiff in error.

COCKE, for the defendant.

DARGAN, C. J.—This was an action of assumpsit upon a contract, by which the plaintiff agreed that he would deliver to the defendant, at the Railroad Warehouse in Montgomery, fifty

19

bales of cotton of the first gathering and packing of his crop then growing, being the crop of 1847, by the 15th day of January 1848; the defendant agreeing to pay the plaintiff upon the delivery of the cotton at the rate of ten cents per pound. ] The testimony introduced on the trial tended to prove the contract as alleged ; and it was also shown that the plaintiff had fifty-five bales of cotton of the first packing of his crop grown in the year 1847, in the Railroad Warehouse in Montgomery, on the day appointed for the delivery of the cotton to the defendant. ¦ It was further proved that the son of the plaintiff, acting as his agent, on that day called upon the defendant and told him he had come to deliver him the cotton. The defendant replied that the plaintiff ought to let him off from the contract, but they then went to the warehouse together, and the plaintiff's agent pointed out the cotton, in the presence of Mr. Maddox, the warehouse keeper, and showed the warehouse receipts, and told the defendant he was ready to deliver the cotton and settle, and that he might take choice out of the fifty-five bales. The defendant replied he had " made no contract with the plaintiff about any cotton." ¦ Maddox, the warehouse keeper, was also examined, and testified that previous to the 15th of January 1848, the plaintiff delivered at his warehouse fifty-five bales of cotton, for which he gave him receipts; and that on the 15th January 1848, the son of the plaintiff, as his agent, showed the defendant the warehouse receipts and pointed out the cotton, and told him he was then ready to deliver him fifty bales and to settle, but the defendant refused to receive the cotton and denied the existence of the contract, saying the contract was incomplete. This witness also stated that upon the receipt of the cotton he had numbered the bales from one to fifty-five inclusive. On this portion of the evidence arises the question, whether the plaintiff was ready and able, at the time designated in the contract, to perform his part of the agreement, and whether the offer made by his agent, under the circumstances shown by the proof, is sufficient to authorise him to recover of the defendant for a breach of the contract on his part.

It is a well settled rule of law, that when a contract is dependent, that is, when one agrees to sell and deliver and the other to pay on delivery, in order to entitle either party to sue for a breach, he must show that he was able and ready to perform his

part of the agreement—(McGehee v. Hill, 4 Port. 170; Porter v. Rose, 12 Johns. 209, and cases there cited)—and if the contract be to deliver goods at a certain time, at a specified place, the party who is to deliver them, by himself or his agent, must be at the place on the day appointed, ready to deliver.—Story on Cont., § 967; Savory v. Goe, 3 Wash. C. C. R. 140; 5 Greenl. 192. If both parties be present at the designated place, at the time appointed, the party who is to deliver the goods, if he wishes to put the party who is to pay for them in default, must offer to deliver them; for if the acts to be done are concurrent and are to be performed at the same time, and both the parties be present and able to perform their respective parts of the agreement, he, who would sue for a breach of the contract, must offer to perform his part, and thus force the other to perform his or refuse; otherwise, as neither party is bound to do the first act, if both be present at the time and place, able and ready to comply with the contract, and neither offers to perform, the time would pass and the contract be annulled, because neither party offered to perform his part.—Chitty Pl. vol. 1, 321-2. Guided by these rules, we must determine, whether the acts of the plaintiff put the defendant in default, in not receiving and paying for the cotton. The plaintiff had fifty-five bales of his first packing at the designated place, at the time appointed for the delivery. By his agent, he offered to deliver fifty of them, and the option was given to the defendant to select the fifty out of the fifty-five. It did not appear that there was any material difference in the bales, either as to the quality or quantity of the cotton. This being the proof, we are of the opinion that the plaintiff showed that he was ready, and that he offered substantially to perform his contract, and that the refusal of the defendant to accept the cotton was a breach of the contract on his part. This view shows that there is no error in the first instruction given by the court to the jury, nor in refusing the fourth instruction prayed by the defendant. Indeed, the court, under the evidence, might have instructed the jury that, if they believed it to be true, the plaintiff had shown a sufficient offer to perform the contract on his part.

The evidence, also, showed that the cotton was of the class known as good middling, which was worth in Montgomery on the 15th of January 1848, six and a quarter cents per pound,

Davis v. Adams.

but at the time of the trial, such cotton was worth nine and three quarter cents per pound.   Under this evidence, the defendant requested the court to charge the jury, that if they believed the plaintiff retained the cotton, and if it had not been proved that the plaintiff had sold it, then the measure of damages was not the difference between six and a quarter and ten cents per pound. This charge the court refused.   The rule is settled that in an action against the vendee for refusing to accept the goods agreed to be purchased at a specific price, the measure of damages is the difference between the price agreed to be given, and the market value of the goods at the time they should have been accepted according to the contract.—Dorman v. Nash, 9 B. & C. 145 ; Philpot v. Evans, 5 M. & Welsb. 475 ; Andrews v. Hoover, 8 Watts, 239 ; Clarke v. Perry, 7 Cow. 681 ; Shepherd v. Hampton, 3 Wheat. 200.   This being the rule by which the damages are to be ascertained, the court did not err in refusing to give this charge, nor the next succeeding one requested by the defendant, which, though different in language, is the same in legal effect.

It also appeared that the fifty-five bales of cotton were of the average weight of five hundred and seventy-five pounds, and it was shown that the average weight of bales was about five hundred and fifty lbs.   The defendant requested the court to charge that this was a breach of the contract, which the court refused.   If the parties had agreed upon the exact weight of the bales, then a tender of bales, materially different as to weight, would not have been a compliance with the contract.   But as the contract is silent as to the weight or the quantity of cotton that each bale should contain, we must infer that they intended the bales should be of the usual weight, without meaning to be exact.   Unless, therefore, the weight of the bales so far exceeded ordinary bales or bales of the usual weight, as to show that the plaintiff intended to gain an advantage over the defendant by reason of the change in price, the court could not say that the bales did not correspond with the contract.   The language of the witness is, that the average weight of bales is about five hundred and fifty pounds; there is, therefore, according to this proof, no exact, usual, or average weight, but bales weighing a little more or less than five hundred and fifty pounds would be considered bales of usual weight. The court, therefore, could not pronounce that bales weighing

Davis v. Adams.

five hundred and seventy-five pounds were so unusual in weight as to justify the defendant in refusing to accept them.

The defendant upon the cross examination of Maddox, proved by him that during the time he and the plaintiff's agent were together at the ware-house, the defendant drew a sample from one of the bales, and asked the witness if that was *good fair cotton*. The witness answered in the negattve. Afterwards the witness sampled all the bales, and found the cotton to be *good middling*, according to the market classification. He also stated that good fair cotton was a better quality than good middling. In reply, the plaintiff asked the witness how the fifty-five bales of cotton compared with the average crops raised in Macon county, and he answered that it was as good as the usual average crops raised in that county. The defendant objected both to the question, and to the answer, but his objection was overruled. The plaintiff also asked the witness what proportion of the crop raised in that county was of the quality denominated *good fair* cotton. The witness answered but a very small proportion. To this question, and also, to the answer thereto, the defendant objected, but his objection was overruled. It is contended that these questions and the answers to them were irrelevant, and should have been rejected on that ground. The cotton was grown in Macon county, and the contract was made there; the contract is silent as to the quality of the cotton; the parties said nothing about its quality. It is but reasonable to suppose that the parties understood the cotton should be of the usual quality grown in that vicinity. We all know that there are different qualities of cotton, and this difference depends in a great degree upon soil and climate. When, therefore, parties contract for a growing crop, knowing where it is raised, we must infer that they intended, if nothing is said as to quality, that the cotton should be of that quality usually grown in that vicinity or neighborhood. The testimony was, therefore, admissible, as tending to show that the cotton was of that quality the parties understood it should be. There are many other objections to the admission of testimony, contained in the bill of exceptions, but we deem them too unimportant to be examined in detail. We have, however, looked over all the errors assigned, and are satisfied there is no error in the record, and the judgment must be affirmed.