# Scruggs & Echols *v.* Riddle.

*Breach of Contract.*

(Decided Nov. 29, 1910. Rehearing denied Feb. 6, 1911.
54 South. 641.)

1, *Evidence; Extrinsic Affecting Writing; Construction; Nature of Ambiguity.*—Where the seller writes a letter confirming the sale of the flour at a stated price, to be shipped out within five months with the understanding that the price named was for shipment ordered out within thirty days, with five cents additional as carrying charges for each thirty days or fraction thereof until the contract is completed, the acceptance was so equivocal in respect to the character of the right, whether of option or of conditions to the seller's duty to deliver, created by the stipulation for ordering out the flour, and also in regard to the parties to the contract for whose benefit the stipulation was provided, as to authorize admissions in evidence of the correspondence leading up to and forming part of the contract of sale.

2. *Sales; Construction; Time for Delivery.*—Where in the contract of a sale of flour executed by correspondence between the parties, the plaintiff offered the flour at a certain price provided it should be taken out within thirty days, or that there should be a charge of five cents additional per barrel for each thirty days or fraction thereof, and all the flour should be taken out within ninety days,

[Scruggs & Echols v. Riddle.]

and at the request of the buyer the time for taking out all of the flour was extended to five months, the seller was under no duty to deliver the flour until it was ordered out by the buyer within five months from the execution of the contract.

3. *Same; Performance of Contract; Time for Delivery.*—Where a party to an executory contract has assumed the duty to do some act upon which a subsequent act, looking to the confirmation of the sale by the other party depends, the former has not complied with his obligations until he performs such act, and the latter is not in default, so long as the former has not performed, if there has been no waiver of performance.

4. *Same; Waiver.*—Where flour was sold to be delivered as ordered out by the buyer within five months of the date of the contract, a letter from the seller stating that the seller would bill the flour to the buyer and hold it subject to their order and draw on them for the amount written about the close of the five month period would not constitute a waiver of the obligation of the buyer to order out the flour.

5. *Same; Waiver of Breach.*—Where flour is sold to be delivered as ordered out by the buyer within five months from the date of the contract, a letter written by the seller after the expiration of the five months, seeking the adjustment of the asserted liability of the buyer for failure to order out the flour, is not a waiver of the breach of the contract by the seller and does not imply that the seller did not regard the failure to order out within the stipulated period as a breach of the contract.

6. *Same; Execution for Breach*—Contracts with third persons being res inter alios acta, the fact that the seller had outstanding during the life of the contract similar contracts to deliver to other buyers much more flour than he had on hand at any time during the life of the contract, does not excuse the failure of the buyer to order out the flour, where the contract provided for the delivery of flour as ordered out by the buyer within five months from the date of the contract.

7. *Same; Remedy of Seller; Breach; Condition Precedent.*—Where flour is sold to be delivered as ordered by the buyer within five months from the date of the contract, the seller's right of action for a breach of the contract by the buyer does not depend on an unqualified refusal by the buyer to accept the goods; the seller's duty being merely to be ready to respond to the orders by the buyer.

8. *Same; Damages.*—Where flour is sold to be delivered f. o. b. Decatur, as ordered out by the buyer within five months from the date of the contract, the measure of damages for the buyer's failure to order out the flour is the difference between the market value at the expiration of the five months period at Decatur, and the contract price, and the freight charges from Decatur to destination is not a factor in the ascertainment of the damages.

9. *Same;"Price; Value; Worth."*—Although strictly speaking "price" tokens the agreement of value by the parties in interest, and "value" is as a rule the general estimate of the money equivalent of the subject of inquiry, yet the terms, "worth," "price" and "value" may be treated as synonymous in determining the damages for the breach by the buyer of a contract of sale.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Action by R. J. Riddle against Scruggs & Echols for breach of contract. From a judgment for plaintiff, defendant appeals. Affirmed.

Count 11 is as follows: "Plaintiff claims of the defendants the sum of $720, for that on October 5, 1905, plaintiff was engaged in manufacturing and the sale of flour at Estill Springs, Tenn., and on said date received from defendants at Decatur, Ala., a letter requesting plaintiff to forward defendants an estimate and price of 1,000 barrels of Nellie King flour, for future delivery. Whereupon, on the 7th day of October, 1905, plaintiff replied and offered said flour delivered at Decatur, Ala., at $4.55 per barrel in cotton sacks, or $4.65 in wood, with a condition that the flour must be taken out or shipped within 30 days, and if plaintiff had to carry said flour beyond that time there would be charged 5 cents per barrel for each 30 days or fraction thereof, and that all flour should be taken out within 90 days. To this proposition of plaintiff the defendants replied on October 9, 1905, that they would enter into a contract for said flour at the offered price of $4.55 per barrel, but requested that defendants be allowed a longer time than 90 days within which to take the flour out. Whereupon plaintiff sent the proposition set up in the contract as set fourth in the eighth count of this complaint [the letter set out in the opinion], except it did not bear the signature of Scruggs & Echols. And plaintiff alleges that defendants signed and accepted said proposition of date October 11, 1905, on October 16, 1905, by letter addressed to to plaintiff in the following language: 'We enclose you our acceptance of sale of 1,000 barrels of Nellie King flour in cotton at 4.55; basis, Decatur.' And plaintiff alleges that during every day of the life of said contract

[Scruggs & Echols v. Riddle.]

he had in his warehouse at Estill Springs, Tenn., 1,000 barrels of Nellie King flour of the grade and character set forth in said acceptance of date October 11, 1905, and that he had, during the time specified in said acceptance, a sufficient number of cotton sacks in which to sack said flour, and had at his disposition 8 or 10 cars during all this time, and on which he was ready and willing to load said flour and ship the same from its place of business at Estill Springs, Tenn., to defendants at Decatur, Ala., freight prepaid. And plaintiff further alleges that defendants failed to perform their part of the foregoing contract, in that they failed to order out said flour, or any part thereof, or pay for the same as required thereby to do."

Count 12, same as 11, above set out, with this additional allegation: "And failed to pay .05 cents per barrel per month for said flour so retained during the time provided for in said contract, to the damage of plaintiff as aforesaid."

The cases cited by appellant in his brief and referred to in the opinion are as follows: *Dingley v. Oler,* 117 U. S. 503, 6 Sup. Ct. 850, 29 L. Ed. 984; *Kilgore v. N. W. Texas, etc., Soc.,* 90 Tex. 139, 37 S. W. 600; *Southern C. Co. v. I. S. Co.,* 38 Tex. Civ. App. 112, 85 S. W. 845; *Frohlich v. Ind. G. Co.,* 144 Mich. 278, 107 N. W. 890; 9 Cyc. 637.

E. W. GODBEY, for appellant. The contract is certain and definite as to subject matter, parties, consideration and period of duration, and prior corespondence by way of negotiations cannot be allowed to vary or explain or substitute any term therein.—*Brennard Co. v. Citronelle Co.* 41 South. 672. As the contract did not in terms impose upon the defendants any duty to give specifications, or to order out, and as the period during which delivery

was to be completed was definite and certain, no obligation on defendants' part to give specifications can be implied.—*Hartfield v. Patton,* Fed. Case No. 6, 158a; *Townsend v. Wells,* 3 Day (Conn.) 327; *Phelps v. Mc-Gee,* 18 Ill. 155; *Metz v. Albrecht,* 52 Ill. 491. If resort be had to the negotiations, the plaintiffs assertion in his letter written the day previous to the date of the contract, that he would at all events ship the flour according to contract, is conclusive that no duty to furnish specifications rested upon the defendants. It was the plaintiff's duty, independent of specifications and his right, to make delivery according to the contract, on the last day of the existence of the period for delivery.—*Davis v. Adams,* 18 Ala. 266, 267; *Park Jr. v. Chateaguay Iron Co.,* N. Y. St. Rep. 507; *Smith v. Loomis,* 7 Sonn. 110. The plaintiff was not absolved from this duty to make delivery, (no specification having been given) by any expressions of reluctance upon the part of the defendants to take the flour, there being no express refusal and no express repudiation.—*Dingley v. Oler,* 117 U. S. 503; *Am. etc. Co. v. Trotter,* 105 Fed. 479; *Kilgore v. Northwestern Tex. etc. Society,* 37 S. W. 600; *Southern Car. Co. v. I. & S. Co.,* 85 S. W. 845; *Frolich v. Ind. Glass Co.,* 107 N. W. 890; 9 Cyc. 637; The plaintiffs letter written three days before the expiration of the period for delivery, and "if not ordered out by Saturday night we will bill the thousand barrels to you and hold it here subject to your order, and draw on you for the amount," would have absolved the defendants from any duty to order out, even if the contract had expressly imposed such duty—3 Joyce, Sec. 1649; 2 Sedgwick, Sec. 753; *Andrews v. Tucker,* 29 South. 38. If the defendants had expressly repudiated the contract before the expiration of the period limited for its performance, the subsequent negotiations on the part of the plaintiff,

even after the expiration of such period, and the plain-
tiff's insistence after such expiration, that the defendants
take the flour, was a waiver on plaintiff's part of any
right of action that he might have had upon the con-
tract as declared upon—*Andrews v. Tucker,* 29 South.
38; *Griggs v. Woodruff,* 14 Ala. 16; *Dingley v. Oler,* 117
U. S. 503; *Vittum v. Estey,* 31 Atl. 144; 3 Page on Con-
tracts, Sec. 1052; 9 Cyc. 608; Wald's Pollock on Con-
tracts, p. 367; Clark on Contracts, p. 446; *Kilgore v.
Society,* 37 S. W. 600. The foregoing propositions are
raised by demurrers to the complaint, which the court
erred in overruling, and by pleas, in sustaining demur-
rers to which the court erred. The plaintiff failed to
show he was able with cars to make delivery as speci-
fied.—*Elliott's case,* 40 South. 1018. The plaintiff failed
to show that he had the specific kind and quantity of
flour on hand ready for delivery. The plaintiff fails to
show the value of the flour at the time and place speci-
fied for delivery.—*Rowland v. Shelton,* 25 Ala. 219;
*Ward v. Reynolds,* 32 Ala. 393; *Kountz v. Kirkpatrick,*
13 Am. Rep. 690, 691. Proof as to the price at the given
time and place is not equivalent to proof of the value
since the plaintiff had a monopoly of the article.—1
Sedgwick on Damages, Sec. 245; 1 Page on Contracts,
Sec. 540; *Harwell v. Lehman,* 101 Ala. 623. The judg-
ment should have been reduced by the reasonable cost of
loading the flour on the cars, which loading was never
done—*Griffin v. Ogletree,* 21 South. 490; 4 Sutherland
on Damages, Sec. 1113. The judgment should have been
reduced by the costs of the freight from the point of pro-
posed shipment to the proposed destination.—1 Sedg-
wick on Damages, Sec. 63; *Buist v. Guice,* 96 Ala. 529.
The court erred in refusing to compel the plaintiff to
answer interrogatories which sought to show the plain-
tiff during the life of this contract, had on hand at all

times, much less flour than would have been required to have fulfilled the existing and binding contracts which he had outstanding for such flour, which could have been ordered out, and in allowing him the five cents per barrel per month carrying charges for keeping said flour on hand.

CALLAHAN & HARRIS, for appellee. The action of the court in ruling against the contention and theory of the appellant in supposing that the counts were going on the theory of a rescission of the contract, and hence, that the proof must be plain and clear that there was an abandonment, is amply supported by the following authorities.—*Florence Wagon Works v. Kalamazoo*, 42 South. 77; *Schleischer v. Montgomery L. Co.* 114 Ala. 228; *Bell v. Hatfield*, 2 L. R. A. (N. S.) 529. The contract is still alive for the purpose of suing thereon for the profits lost.—*Marks v. Miller*, 134 Ala. 347; *Wilkerson v. Black*, 80 Ala. 331; 24 Ala. 194; 8 L. R. A. (N. S.) 1174; 7 A. & E. Enc. of Law, 152. The letter confirming the sale shows on its face a duty resting upon the defendant to notify the plaintiff when they shipped the flour.—*U. S. v. Bethelehem S. Co.* 205 U. S. 105; *Roquemore v. Vulcan I. Wks.* 44 South. 557. The contract was ambiguous to such an extent as to authorize evidence aliunde.—*Weir v. Long*, 39 South. 947; *Boykin v. The Bank*, 72 Ala. 262; 2 Page on Contracts sec. 1129. The correspondence was also admissible for the purpose of showing the construction placed by the parties to the contract.—23 N. Y. 405; 24 N. Y. 40; 12 L. R. A. (N. S.) 745; 9 Fed. 628; 70 Am. St. Rep. 592; 82 N. E. 232. The evidence sustains the judgment.—*Cefalu v. Dearborn*, 49 South. 1030; *Fulton v. Norris*, 49 South. 1028; Sec. 5359, Code 1907. No waiver is shown.—*Pelham v. Chattahoochie G. Co.* 146 Ala. 225; *Marks v. Miller, supra.*

[Scruggs & Echols v. Riddle.]

On the question as to the proper measure of damages, and as to a definition of price, value and worth, counsel cite the following.—104 Ala. 450; *Burks v. Hubbard,* 69 Ala. 381; *Johnson v. West,* 43 Ala. 690; *Ward v. Reynolds,* 32 Ala. 390; *Foster v. Rogers,* 27 Ala. 603; *Clark v. Zeigler,* 85 Ala. 156; *Rawls v. James,* 29 Ala. 183; *American O. E. Co. v. Ryan,* 112 Ala. 337; *Prestwood v. Watson,* 111 Ala. 604; *So. Ry. Co. v. Coleman,* 44 South. 837; *Peck-Hammond & Co. v. Heifner,* 33 South. 807; *Worthington v. Gwin,* 119 Ala. 441.

McCLELLAN, J.—Action by seller (appellee) against buyers (appellants) for breach of contract in the sale and purchase of goods.

The trial was had on counts 11 and 12. They will be set out, without needless repetition, in the report of the appeal.

The following letter, with the indorsed acceptance thereon by appellants, is the basis of the action: "10/11/05. Scruggs & Echols, Decatur, Ala. Gentlemen: We beg to confirm sale to you of 1,000 Bbls. Nellie King flour, basis $4.55 in cotton sacks, $4.65 in wood, delivered f. o. b. Decatur, Ala., to be shipped out within five months from date, terms sight draft, B/L attached. It is understood that the price of $4.55 cotton and $4.65 wood is to be the price for all shipments ordered out within thirty days, with 5 cents additional carrying charges for each thirty days or fraction thereof until the contract is completed. Yours very truly, Tenn. Mill Co. Accepted, Scruggs & Echols."

The substance of the breach alleged common to both counts (11 and 12) was the failure to order out the flour within the five months mentioned in the quoted letter. Count 12 contains the added averment that the defendants "failed to pay 5 cents per barrel per month for

said flour so retained during the time provided for in said contract."

Against these counts the defendants presented below, and, failing there, urged here, these chief objections to a recovery on them : First, that the letter quoted above is the sole expositor of the contract between the parties, and being clear and unambiguous, it is asserted, cannot be altered or explained by negotiations leading up to the letter and the acceptance indorsed thereon; second, that to order out the flour was a mere option given defendants, not a condition precedent to plaintiff's duty to deliver the flour within five months, which (option) being unavailed of by defendants still left the duty on the plaintiff to deliver the flour within the five months period; and plaintiff not having so delivered it f. o. b. Decatur, or not having shown an unequivocal refusal by defendants to receive the flour if so delivered, could not recover, since one in legally unexcused default cannot successfully maintain an action for a breach of the contract. The first objection is grounded, as appears, upon the averments of the counts in respect to the correspondence alleged to have culminated in the letter of October 11th and its acceptance by defendants.

We cannot approve the insistence that the letter of October 11th is so clear, unambiguous, and complete in itself as to exclude explanations to be gathered from previous negotiations. While the letter does clearly state the subject of sale and the price thereof and the place of delivery, it is on its face uncertain, equivocal, in respect of the character of right, whether of option or of condition to the seller's duty to deliver, created by the stipulation for ordering out the subject of the sale and purchase, as well as uncertain, equivocal, in respect of the party to the contract for whose benefit it was provided. If the letter had closed with the words "at-

tached." and the acceptance had been predicated upon that alone (pretermitting influence to the fact that it purports to be confirmatory of a previously effected sale), there would have been no hesitancy in affirming that the duty to ship out the purchase within five months rested solely upon the seller. In other words, the stipulation would have been clearly that the seller had five months in which to deliver the flour to the purchasers. But the parties did not conclude with terms so readily interpreted. They stipulated further. They provided that the price should be $4.55 cotton and $4.65 wood for "all shipments ordered out within thirty days," but that for shipments beyond 30 days, additional carrying charges should be made for each 30 days or fraction thereof until the contract was completed. Taking the part of the letter down to and including "attached," in connection with the later provision thereof, it is evident that the seller was not intended to have five months in which to deliver the 1,000 barrels of flour. It is further evident that the buyers had the absolute right to order out the flour, in whole or in part, within 30 days, and thus avoid the additional charges provided for, or to not order out the flour after 30 days and thus become liable for the additional charges provided for. And it is further just as evident, and a certain consequence of the right of the buyers to postpone the shipment, and thereby incur liability for the additional charges, that the seller had no right to accelerate delivery or deliveries. While these considerations are factors in the ascertainment of the intention of the parties in the particulars controverted by the respective litigants, as upon the demurrers to counts 11 and 12, they do not necessarily determine the dispute, for it is the gist of the contention of the defendants that the contract was, within the intention of the parties, that, if the buyers did not order

[Scruggs & Echols v. Riddle.]

out the flour within five months, the seller had obligated himself to deliver f. o. b. Decatur within that period.

It might be strongly supported in argument, upon fact, that the letter of October 11th itself forbids such a construction; and not the least forcible consideration leading to that conclusion is that the buyers had assumed the obligation to pay, and the seller, to accept, the additional charges, the amount of which rested in the control of the buyers, who could refrain from ordering out the flour, in whole or in part, until the stipulated five months had expired. In short, that the buyers could postpone the shipment or shipments throughout the period provided, and, on the other hand, that the seller could not under the contract accelerate the delivery or deliveries, because the buyers had not seen fit to direct shipment or shipments. And, if so, it obviously resulted that the seller was not bound to deliver the flour within five months, since it is patently impossible to conclude one to a performance of a given act within a given period, when the condition to that performance is in the absolute control of the other party for the entire period. As indicated, however, the necessities of this case do not require the acceptance or rejection of the just stated argument. Waiving it, in the abundance of caution leading to full assurance of correctness, we prefer to take the view prevailing with the court below, viz., that whether, as read from the letter of October 11th, the provisions for the ordering out of the shipments was merely an option given the buyers, or was a condition precedent to delivery by the seller, and hence, when not performed, a breach of the contract relieving the seller of a first duty to deliver or to aver or show a legal excuse therefor, was, in view of the terms of the letter of October 11th, an inquiry inviting extrinsic evidence to clear up this ambiguous feature of the letter,

calling for a full showing of the negotiations leading up
to the agreement, all with the purpose, of course, to as-
certain the intent of the parties in this particular, and
to determine the character and effect of the stipulation
with respect to the shipment of the flour. When these
negotiations are considered and the letter of October
11th is read in their light, there is left no doubt in the
premises.

Briefly stated, the agreement was that the seller sold
the buyers 1,000 barrels of flour, to be delivered on the
buyers' orders, which orders were to be communicated
and the flour "taken out" within five months. This con-
clusion cannot be avoided when it is considered that at
no time within the five months, the entire life of the con-
tract, could the seller deliver without the order of the
buyers. That he could not is obvious from the fact that
during the whole of the period the buyers had agreed
to pay, and the seller, to accept, additional charges for
"carrying" the flour not ordered out after the first 30
days. And this inquiry tests, we think, the soundness
of the construction indicated: If the seller had not de-
livered the flour f. o. b. Decatur within five months, and
after the expiration of that period the buyers had sued
him upon the theory that he had breached the contract
to deliver, as stated, could they have prevailed against
the objection by the seller that they had not ordered out
the flour, to carry which, pending the period, the seller
had agreed to accept, and they to pay, a stipulated
monthly charge? We think not; for the duty to ship,
a condition, of course, to delivery f. o. b. Decatur, was
consequent upon the order of the buyers; and if the
duty to ship, to deliver, within the stated period,
was taken as imposed by the contract on the
seller, the result would be that the stipulation for car-
rying the flour, during the whole period, would be justi-

fiably ignored. The seller was, then, under no first duty to deliver without an order or orders, within the period, from the buyers to do so, and was hence not in default on that score in failing to ship, to deliver f. o. b. Decatur, pending the life of the contract, viz., five months.

If this construction of the contract is sound, the principle controlling the decisions in *Florence Wagon Works v. Kalamazoo, Spring & Axle Co.,* 144 Ala. 598. 42 South. 77, and *Schleicher, Schumm & Co. v. Montgomery Light Co.,* 114 Ala. 228, 21 South. 1014, is applicable, and those decisions are authoritative on the questions considered. It is that, where a party to an executory contract of sale of goods has assumed the duty to do some precedent act upon which a subsequent act, looking to a consummation of the sale by the other party, depends, the former has not complied with his obligation until he performs, and the latter is not in default so long as the former has not performed, provided, of course, there was or has been no waiver by the latter of performance by the former.

Counsel for appellants cites in brief a number of texts and decisions as opposed to the view which we think must prevail in this instance. The report of the appeal will show them. Among the more apt in point of fact of those cited is *American Tin-Plate Co. v. Trotter* (C. C.) 105 Fed. 478. There are others cited substantially as pertinent to appellants' contention. All have been carefully considered, but after so doing we feel impelled to decline to follow them in the construction of the contract in hand; on the contrary, we prefer to apply the principle underlying our own decisions above cited.—*Davis v. Adams,* 18 Ala. 266, would be in point if the contract in this instance had been expressed in that part of the letter of October 11th down to and including the word "attached." The last clause of the

letter distinguishes the cases in point of fact and the effect thereof.

It follows that the demurrers to counts 11 and 12 were properly overruled. And this conclusion so disposes of the several assignments of error predicated upon the court's action in overruling the motions to strike parts of these counts, and also those rested on the admission of evidence tending to show the negotiations leading up to the contract sued on.

It need hardly be pointed out, in view of the conclusions stated, that the seller's right of action, as for the breach alleged in counts 11 and 12, did not depend upon any unqualified, absolute refusal of the buyers to accept the goods. There was no primary duty on the seller to tender them. His duty was to be ready and willing, as averred, to respond to the ordering out of the flour by the buyers. There is nothing in plaintiff's letter of the 7th of March, containing the expression, "If not ordered out by Saturday night we will bill the thousand barrels to you and hold it here subject to your order, and draw on you for the amount," tending to show a waiver of the obligation of the buyers to order out the flour within the period or evincing an acceptance or agreement by the seller of the idea that the contract was no longer binding. The converse consists with the quoted terms of the letter. Besides, as was said in *Florence Wagon Works v. Kalamazoo Spring & Axle Co., supra,* "it (seller) could have delivered them (goods) on the day of the expiration (of the period) and compelled defendant to pay the purchase price agreed on. But this was not its obligation." The seller here, as there, had the right to await the ordering out of the flour by the buyers, and if that was not forthcoming within the period, to sue for the breach of that obligation of the contract. Plaintiff's letter of March 13, 1906, in response to de-

fendants' letter of March 10, 1906, does not show any intent on plaintiff's part to waive the breach counted on, or to imply that plaintiff did not regard the failure to order out, within the stipulated period, as not a breach of the contract. The letter, as we read it, was a negotiation looking to an adjustment of the asserted liability of the buyers.

Plea 6 undertook to set up as a reply to counts 11 and 12 that the seller had outstanding during the life of this contract similar contracts to deliver to other buyers greatly more flour than the seller had on hand at any time during the life of this contract. The breach here alleged was the failure to order out the flour. The facts (if so) relied on were not, in any sense, matter in bar or in confession and avoidance of the cause of action stated. These buyers could not defeat or avoid the consequences of their alleged breach by reason of the fact (if so) that to have met and complied with their order, if given, the plaintiff must have breached other contracts. It was the obligation of these buyers to order out the flour within the period provided. The principle to which the matter asserted in plea 6 is doubtless referable is that the seller had disabled himself from complying with the contractually imposed obligation of the buyers to order out the flour. Whether in such case as this the obligation to specify, order out, may be waived by the seller's other act than one necessarily referable to the particular contract alleged to have been breached by the buyer may be a debatable question, to consider or decide which we are in this instance not invited. At any rate, the facts set up in plea 6 amount, at most, only to an assertion that the seller could not have delivered the flour, if ordered out, without breaching other contracts. The counts expressly aver ability and willingness to deliver had the flour been

ordered out.   The possibility, or even certainty, that the rights of other like buyers would suffer, was, as far as these buyers were concerned, res inter alios acta.   The third parties to like contracts might waive a breach of the seller's contract if he failed to supply flour to them under their contracts.   These defendants cannot be heard to say, in effect, in defense of the action for their breach, that such third parties, likewise contracting, would not have so waived breaches as to them.   Besides it could not be anticipated that, with equal obligations to supply flour under such contracts to the defendants and others, the plaintiff would not have met his duty to defendants when they ordered out the flour, to the exclusion of the others holding similar contracts.

Without undertaking a statement of the evidence tending to support the averments of counts 11 and 12, it will suffice to say that, after careful consideration of the evidence, the court's conclusions, aside from the matter of the quantum of the recovery, which will be later considered, find sufficient support therein.

Apart from the damages recoverable under count 12, as for the carrying charges fixed by the contract, of 1,000 barrels of flour for four months at 5 cents per barrel, amounting to $200, with interest to be added from March 11, 1906, the measure of plaintiff's damages was the difference between the market value, March 11 to 13, 1906, of the flour at Decatur, and the contract price for the flour.   In other words, the profits plaintiff would have made had the contract been performed, and not breached, by defendants.   The market value at Decatur, on March 10 to 13, 1906, of this flour was shown to be $4.28 per barrel.   What the freight charges per barrel were from Estill Springs to Decatur was not a factor in the ascertainment of the damages suffered.   The inquiry was market value at Decatur at the time stated.

In *Buist v. Guice,* 96 Ala. 255, 11 South. 280, the action was by the buyer against the seller. The seller had agreed to deliver the potatoes f. o. b. Philadelphia; and the buyer was to pay the freight charges from that point to Eufaula, Ala. The seller did not deliver as stipulated. The inquiry was, What damages did the buyer suffer, under the contract, in consequence of the breach? Obviously, it was the difference between the market value at Eufaula, less what it would have cost the buyer to transport the potatoes from Philadelphia to Eufaula. In such case, as we held, the freight charge was an essential factor in the assertainment of what the buyer's damage, loss, was.

Here the seller sues for the buyers' breach, he (seller having engaged to deliver f. o. b. Decatur. He proves the market value there (Decatur). To deduct from that market value the sum of the freight charge from Estill Springs to Decatur would operate to twice charge him (seller) with the expense of transportation. Now, if the seller had shown that the market value of this flour of his manufacture was a certain sum at Estill Springs, and that it was the same elsewhere plus the transportation charge to the place of delivery, then his loss would have been the difference between the value at Estill Springs plus the transportation charge to Decatur, which he had engaged to bear, and the price fixed in the contract between these parties. Such is not the state of the evidence. The market value at Decatur was shown.

While the argument of counsel for appellants, pointing out that the terms "price' and "value" are not of each other synonymons, is not without merit as respects the more accurate, exact use of these terms in dealing with matters of damages suffered in consequence of breaches of executory contracts of sales of goods, it can-

[Scruggs & Echols v. Riddle.]

not be ignored that even in the judicial writings of the most cautious and accurate law writers these terms have been frequently used synonymously. Our own decisions present may of such instances. It is, of course, more to be desired that each term be employed with perfect exactness, for "price" is not necessarily the equivalent of "value." The former tokens agreement upon a value by parties in interest; while the latter is, as a rule, the general estimate of the pecuniary equivalent of the subject of inquiry. The lexicons pronounce the terms "worth," "price," and "value," as synonymous. The evidence of the market value of this flour at Decatur was undertaken to be expressed in the term "worth." In view of the general use and employment of the terms mentioned, we do not think a fair interpretation of the evidence in this record would warrant the drawing of the distinction pressed for appellants.

No error appears. The judgment is affirmed.
Affirmed.

ANDERSON, MAYFIELD, and SOMERVILLE, JJ., concur. SIMPSON, J., concurs in construction of contract, but not in measure of damages. DOWDELL, C. J., and SAYRE, J., dissent.