# Hopkinsville Milling Co. *v.* Gwin, *et al.*

### *Assumpsit.*

(Decided November 12, 1912. Rehearing denied December 17, 1912.
60 South. 270.)

1. *Sales; Contract; Construction; Time of Delivery.*—The contract considered and it is held that the stipulations on the face of the contract govern and that the purchaser had the option to order the flour to be delivered at any time before or after the expiration of the 90 day period, but within a reasonable time; and that the purchaser was not liable for carrying charges until the expiration of sixty days from the date of the contract, but was liable thereafter at the rate and in the manner specified until they declined to accept the flour.

2. *Sales; Breach; Damages.*—Where the date of delivery is at the option of the buyer, the seller's measure of damages for breach of the contract by the buyer is the difference between the contract price and the market price at the time the buyer declined to order out the goods and accept shipment.

APPEAL from Birmingham City Court.

Heard before Hon. WM. M. WALKER.

Action by the Hopkinsville Milling Company against J. C. B. Gwin and others, as partners doing business under the firm name and style of the Bessemer Grocery Company, for breach of contract. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

The following is a copy of the contract:

"No.———. Date, 8/26/10. Hopkinsville Milling Co., of ———, sell, and ———, of ———, buy at Hopkinsville, Ky., the following articles: Ship to Bessemer Grocery Co., at Bessemer, Ala. Ship via ———. Date of shipment, buyer's option. Terms, ———. No. barrels, 1,000. Brand, Perfection. Pgs., Cotton. Price, $5.10. C. A. F., Birmingham, Bessemer, or Ensley. To be carried 60 days free, and 5 cents per barrel per month

till taken out. This sale is made subject to the terms and conditions printed on the back hereof, which are hereby agreed to. [Signed] Bessemer Grocery Co., by J. C. B. Gwin. Accepted: Hopkinsville Milling Company. S. C. Johnston, Seller."

The terms on the back are as follows: "Conditions Covering Sale of Flour and Feed Adopted by the Southeastern Millers' Association, November 12, 1907. 1. Terms—Demand draft with bill of lading attached. 2. Unless otherwise specified, purchases must be ordered out within 30 days from the date of contract, with a maximum possible limited of 90 days from date of contract. If not so ordered out within 30 days, or within contract shipment period, flour is without notice from seller subject to carrying charges of 10 cents per barrel per month, or fraction thereof, and feed 50 cents per ton per month, or fraction thereof. Such carrying charges become due and payable at the beginning of each 30-day period after the first 30 days of free storage, the buyer hereby agreeing to pay the same at the beginning of each 30-day period. Failure to order flour out on demand of shipping instructions at expiration of the maximum 90-day period, or to pay accrued carrying charges on demand, gives seller the right to cancel contract, or resell the goods for buyer's account. Upon failure of seller to make shipment of 30-day contract within 14 days from receipt of specifications for such shipment, flour is without notice from buyer subject to a credit of 10 cents per barrel per month, or fraction thereof, and further failure to ship within the maximum 90-day limit entitles the buyer to cancel the contract or buy a similar quantity and grade of goods for seller's account. All contracts or agreements are contingent upon strikes, accidents, delays of carriers, or other delays, unavoidable or beyond seller's control.

3. Differentials between packages shall be as follows: All quotations shall be based on flour packed in 24, 48 and 96 pound cotton sacks. Flour in 1-16 bbl. cotton (12 lbs.) 15 cents per bbl. more than basis. Flour in wood 15 cents per bbl. more than basis. Flour in half bbl. wood 45 cents per bbl. more than basis. Flour in 140 lbs. jutes 10 cents per bbl. less than basis. Flour in bulk 20 cents per bbl. less than basis. 4. In all sales of flour and feed the actual shipment of the articles sold is contemplated, and seller is expected to ship, and buyers to receive said goods. Prices: 5. It is understood and agreed that the price covers cost and freight to destination only, unless otherwise stated, and that the terms, "C. A. F." (cost and freight) on invoices only means cost and freight. The shipment of a purchase and furnishing a bill of lading issued by a common carrier shall be construed as a delivery on and a completion of a sale. No verbal conditions or modifications to alter this contract."

LONDON & FITTS, for appellant. The court was in error in its construction of the contract as is demonstrated by its oral charge and by the written charges given at the request of the defendant and the refusal of charges requested by plaintiff.—35 Cyc. 183; 78 Ill. 309; 22 Ill. App. 394; 25 Ill. App. 218; 5 Ind. 120; 134 Fed. 804. The failure to order out the flour was a breach of the contract and the measure of damages was the difference in the market value at the date of the contract and the date of the breach.—*Gate City Mills v. Rosenau,* 159 Ala. 414; *Scruggs v. Riddle,* 54 South. 641; *McAllister v. Matthews,* 52 South. 416; *Davis v. Adams,* 18 Ala. 286.

PERRY & BUMGARDNER, for appellee. The court properly construed the contract and the judgment should

be affirmed.—*Flouss, et al. v. Eureka Company,* 80 Ala. 30; 29 Cyc. 1502; *Seay v. McCormack,* 68 Ala. 549; *Livingston v. Arrington,* 28 Ala. 424; *Hunter v. Mc-Graw,* 32 Ala. 518.

MAYFIELD, J.—This action is by the vendor against the vendee to recover damages for breach of a contract for the sale of 1,000 barrels of flour.

The evidence of the contract of sale is in the form of a printed order blank used by the plaintiff in its business, which the reporter will set out in full. Upon the back of this order is printed fixed conditions. The face of the order contains blanks to be filled in with data descriptive of the particular contract of sale, such as dates and places of sales and deliveries, brands, amounts, and grades of flour sold, character of packages—whether in barrels or sacks, etc. The chief, if not the only, difference between the parties is as to the construction of this particular contract of sale, as to the effect or means of the phrase, "buyer's option," which is written into one of the blank spaces on the face of the order blank or written evidence of the contract. This phrase is written in the blank space designated as "Date of Shipment."

One of the five printed conditions on the back of the order is as follows: "(2) Unless otherwise specified, purchases must be ordered out within 30 days from the date of contract, with a maximum possible limit of 90 days from date of contract. If not so ordered out within 30 days, or within contract shipment period, flour is without notice from seller subject to carrying charges of 10 cents per barrel per month or fraction thereof, and feed 50 cents per ton per month, or fraction thereof. Such carrying charges become due and payable at the beginning of each 30-day period after the

first 30 days of free storage, the buyer hereby agreeing to pay the same at the beginning of each 30-day period. Failure to order flour out on demand of shipping instructions at expiration of the maximum 90-day period, or to pay accrued carrying charges on demand, gives seller the right to cancel contract or resell the goods for buyer's account."

It is contended by plaintiff, the appellant here, that the phrase, "buyer's option," written in pencil on the face of the order, is the only specified date at which the flour should be shipped, and that this should be construed as meaning within any reasonable time to be named by the purchaser in his shipping orders, and that this provision is substituted for, and takes the place of, the printed provisions on the back, above referred to, as to the dates of shipment or of delivery, that this order is one within the protection of the printed provision, "unless otherwise specified," and that the terms and dates of delivery were "otherwise specified" in this contract, and, as otherwise specified, were at the option of the buyer, provided, however, that it was within a reasonable time. The construction of the vendees, the appellees here—and the construction which seems to have been adopted by the trial court—of the contract in the particular in question is that the printed condition on the back of the order above set out as to dates of shipment or of deliveries or of orderings out, etc., control, and that the phrase, "buyer's option" written on the face of the order, means, at his option, within the "maximum possible limit of 90 days"—that is to say, in the language of the trial court, that the provision means that the flour should be shipped to the vendee at his option at any time within the 90-day period referred to on the back of the contract, and that the vendor should have the right to resell the flour at

the expiration of the 90 days, if not ordered out, and that his damages would be the difference between the contract price and the market price of the flour at the end of the 90-day period, or within a reasonable time thereafter in which to make resale, plus the carrying charges of 5 cents per barrel for 30 days. Under this construction, the contract was at an end, so far as carrying charges were concerned, at the expiration of the 90-day period, and so far as the price of the flour was concerned, at an end at the same time, or within a reasonable time thereafter in which to make resale. While we are not able to say that there is no doubt about the proper construction to be placed upon these provisions of the contract, yet we are constrained to hold that the vendor's construction of the contract is the proper one. We are confirmed in this opinion by the fact that the parties to this contract seem to have placed this construction upon it. It is certain, at least, that neither party placed upon the contract the construction urged by the vendees until long after the 90-day period had expired. Under the contract as we construe it, the vendees had the option to order the flour to be delivered at any time before or after the expiration of the 90-day period, provided, however, that it was within a reasonable time, and that they were not liable for carrying charges until the expiration of 60 days from the date of the contract, but were liable as for such charges thereafter at the rate and in the manner specified until their refusal to accept or declination to order shipment, or refusal to accept if delivered or tendered.

The measure of damages as to the difference in price is the difference between the contract price and the market price at the time the vendees declined to order the shipment. Under the contract in question, the refusal of the vendees to take the flour purchased, or to

order it out on the 24th of May, was a breach of the contract on their part, authorizing the vendor to sue therefor; and the measure of damages is as we have above stated it.—*Scruggs & Echols v. Riddle,* 171 Ala. 350, 54 South. 641; *McAllister v. Matthews,* 167 Ala. 361, 52 South. 416, 140 Am. St. Rep. 43; *Davis v. Adams,* 18 Ala. 268; *So. Cotton Oil Co. v. Heflin,* 99 Fed. 339, 39 C. C. A. 546; *Gate City, etc., v. Rosenau,* 159 Ala. 414, 49 South. 228. The law as to the measure of damages in cases like this has been so well stated by Tindal, C. J., and by Chief Justice Fuller of the Supreme Court of the United States, that we content ourselves by quoting these two authorities, the first of which receives the sanction of Mr. Benjamin in his most excellent work on Sales, and the latter cites and quotes both Chief Justice Tindal and Mr. Benjamin, and reviews the other authorities upon the subject. The law, with the reason for it, was thus stated by Tindal, C. J., in delivering the opinion of the Exchequer Chamber in *Barrow v. Arnaud,* 8 Q. B., 604-609: "Where a contract to deliver goods at a certain price is broken, the proper measure of damages in general is the difference between the contract price and the market price of such goods at the time when the contract is broken, because the purchaser, having the money in his hands, may go into the market and buy. So, if a contract to accept and pay for goods is broken, the same rule may be properly applied, for the seller may take his goods into the market and obtain the current price for them."—2 Benj. on Sales (4th Am. Ed.) 973. In the case of *Roehm v. Horst,* 178 U. S. 1, 20, 21, 20 Sup. Ct. 780, 788 (44 L. Ed. 953), Chief Justice Fuller, after announcing the above rule, concludes as follows: "As to the question of damages, if the action is not premature, the rule is applicable that plaintiff is entitled to compensation

based, as far as possible, on the ascertainment of what he would have suffered by the continued breach of the other party down to the time of complete performance, less any abatement by reason of circumstances of which he ought reasonably to have availed himself. If a vendor is to manufacture goods, and during the process of manufacture the contract is repudiated, he is not bound to complete the manufacture, and estimate his damages by the difference between the market price and the contract price, but the measure of damage is the difference between the contract price and the cost of performance.—*Hinckley v. Pittsburg Co.*, 121 U. S. 264 [7 Sup. Ct. 875, 30 L. Ed. 967]. Even if in such cases the manufacturer actually obtains his profits before the time fixed for performance, and recovers on a basis of cost which might have been increased or diminished by subsequent events, the party who broke the contract before the time for complete performance cannot complain, for he took the risk involved in such anticipation. If the vendor has to buy, instead of to manufacture, the same principle prevails, and he may show what was the value of the contract by showing for what price he could have made sub-contracts, just as the cost of manufacture in the case of a manufacturer may be shown. Although he may receive his money earlier in this way, and may gain or lose by the estimation of his damage in advance of the time for performance, still, as we have seen, he has the right to accept the situation tendered him, and the other party cannot complain." It therefore follows that the trial court erred in its instructions to the jury involving a construction of the contract, as to which exceptions were reserved, and on account of which the nonsuit was taken.

We find no errors of law as to the rulings on the plea of set-off. The only dispute as to that seems to be one

of fact as to whether there was any obligation or duty resting on the vendees to first order the thirty tons of shorts to be shipped out before the vendor could be made liable for failure to deliver.

Reversed and remanded. All the Justices concur.


