# CHARLESTON.

## PANCAKE *et al. v.* GEORGE CAMPBELL CO.

### Submitted Sept. 3, 1897—Decided Nov. 24, 1897.

1. CONTRACTS—*Ambiguity—Parol Evidence.*

    While prior or contemporaneous declarations of parties contracting cannot be received to interpret an ambiguous written contract, yet evidence that certain alterations from the first draft of the contract were made by the parties before its execution is admissible to show their real intention. (p. 85).

2. CONTRACTS—*Sales—Breach of Contract—Remedy.*

    Where there is a contract for the sale of goods, and the purchaser repudiates the contract, and refuses to consummate it by acceptance of the goods, the seller may at once sue for damages for breach of the contract, without waiting for the period for the delivery of the goods to elapse, and without tender of them. (p. 84).

Error to Circuit Court, Hampshire County.

Action by Pancake & Co. against the George Campbell Company for damages. Plaintiffs had judgment. Defendant brings error.

*Affirmed.*

R. W. MONROE, for plaintiff in error.

H. B. GILKESON, for defendants in error.

BRANNON, JUDGE:

The plaintiff in error, by counsel, insists that its demurrer to the declaration should have been sustained. The declaration states that the following written contract was made between the parties:

"Romney, W. Va., May 15. 1893.  We have this day sold to George Campbell Co. 1,000 tons of chestnut oak bark, 2,000 lbs. to the ton, for seven dollars and twenty-five cents (7.25) per ton; no bark to be delivered until after August 1st, except as said George Campbell Co. may direct.  All bark delivered from June 1, 1893, to June 1, 1894, on their scales at Romney; bark to be in good merchantable condition, and dry, and, if not in such condition to be docked so as to make it equivalent to good and dry bark.  All bark received during week to be paid for at end of same.  Pancake & Co.

"We hereby accept the above terms.  George Campbell Co., per T. D. Campbell."

The declaration avers that the plaintiffs, Pancake & Co., between the 1st day of June, 1893, and 30th of September, 1893, were ready and willing to deliver to the defendant the bark, and offered to deliver the same, and the defendant refused to accept the same.  The suit was brought for the recovery of damages, for the breach of the contract, on 30th of September, 1893.  The defendant claims that it was prematurely brought, and that the contract contemplated a ratable monthly delivery from August 1, 1893, to June 1, 1894,—an average delivery of so many cords per month,—and that the plaintiffs could not exercise the right of delivering all at once, or faster than the ratable monthly average, and could not sue for breach of contract on the 30th of September, 1893.  Some counts of the

declaration would not be obnoxious to the demurrer, they being counts for goods sold and delivered; but, other counts going for the whole damage for breach of the contract to accept any pay for one thousand tons of bark, we must interpret the legal effect of the written contract.

I do not think there is any ambiguity in the contract, calling for or admitting any oral evidence for its interpretation. The contract did give the defendant the right to refuse to take any bark until after August 1, 1893, but gave no such right of refusal after that, since the contract imposed upon Pancake & Co. the duty of delivering the bark between 1st of June, 1893, and 1st of June, 1894, giving them the right to deliver between these dates in such quantities and at such times as they chose. The very fact that the writing gave the Campbell Company the right to refuse bark up to the 1st of August, 1893, implies the right of the other party to deliver as it chose afterwards. There is no limitation upon that right in the writing, and it is the reflex of the intent of the parties. Pancake & Co. had the right to take the entire time between 1st of August, 1893, and 1st of June, 1894, for delivery; but the other side had no right to refuse to accept bark between these dates. These considerations would overrule the demurrer, for, as the declaration alleges the offer to deliver the whole quantity, and the refusal of the defendants to accept, it gives immediate cause of action. The plaintiff is not suing for the price of the whole quantity of bark, but for some bark delivered, and for damages for refusal to accept the balance, and when once the Campbell Company refused to go on with its contract, as the declaration alleged it did, the plaintiff could, without actual delivery or even tender of the bark, and without waiting for the 1st of June, 1894, to arrive, sue for damages. When one party refuses to complete the contract, the other can sue for consequent damages at once. *James* v. *Adams,* 16 W. Va., 245; 3 Am. & Eng. Enc. Law, 908; *Johnson* v. *Burns,* 39 W. Va., 661, (20 S. E. 686); *Meredith* v. *Salmon,* 21 Grat. 769; 1 Am. & Eng. Enc. Law, 541.

It is claimed that the court erred in allowing Pancake to be asked, after he had said that the draft of the contract was in the handwriting of Campbell, in whose hand the in-

terlineations were, to which he answered, "In mine," and was then asked, "How did those interlineations come to be made?" and he answered: "As the contract was originally written by T. D. Campbell, and presented to me, I refused to sign it, and said to T. D. Campbell that we had contracted for the bark from other parties, and it would be coming in, and we wanted to deliver it as fast as we got it, and we would not contract otherwise. We were willing to defer delivery until July 13th, except as defendant might request, as the parties from whom we had bought the bark would not begin to bring it in very fast until that time. Said Campbell then asked that the time be deferred until August 15th, for beginning delivery, to which I objected, but finally agreed to August 1st as the time, and the alteration was then agreed to, and the erasures and interlineations were made; and T. D. Campbell signed the agreement for the defendant, and I signed it for the plaintiffs." The witness had before him the writing, the original draft of which read, "Bark to be delivered as said George Campbell Co. may direct, from June 1, 1893, to June 1, 1894;" and from it the words "bark to be delivered" were erased, and the interlineation was made, "No bark to be delivered until after August 1, except," and then the words "all bark delivered" were interlined after the the word "direct," and before the words "from June 1, 1893." It seems to me that this evidence of Pancake was admissible as part of the *res gestæ*,—a part of the very act of the formation of the contract. It showed just what the parties meant as to the time of delivery of the bark. It made that so clear that there could be no dispute about it before the jury, and its admission is therefore defensible. It shows that the defendant wanted to insert a privilege in it to direct the process and time of the delivery of the bark, and that the plaintiffs would not consent to it, and that the right of the plaintiffs to deliver unrestrictedly between those two dates was accorded to them, and no mention of periodical or partial deliveries was made, and it cannot be inserted by construction. Counsel for plaintiff in error would have us say that this writing is ambiguous, and that we must place ourselves in the position of the parties to arrive at the intention of the parties, and

consider surrounding facts and circumstances; and he ar-
gues that as it was the intention of the defendant to erect
a factory at Romney, to grind bark, with a capacity of ten
tons per day, we are to infer that the parties meant a de-
livery not greater than that,—indeed, a delivery on an
average for the period.   Now, if we admit an ambiguity in
the writing, allowing oral evidence, how much more con-
clusive than that circumstance is the fact of this radical
change in the original draft of the instrument?    The
change is the total denial of the construction which the de-
fendant would now put upon the words.   This is not the
case of mere antecedent or contemporaneous oral declara-
tion, introduced to explain a contract; but it is putting
ourselves in the situation of the parties, and showing what
they actually did in the very execution of the contract.
But this discussion is immaterial, and introduced simply
in deference to the counsel's argument; for the fact is it has
no force, not even pertinency, to the case, because the
oral evidence objected to only shows what the writing it-
self in legal construction shows, and therefore, even if the
oral evidence were not admissible, its introduction would
be harmless error.   The writing itself speaks the same
language and meaning.

Complaint is made that the court refused to instruct the
jury that, under the contract, in view of the evidence in
the case, the plaintiffs did not have the right to require
defendant to receive all the bark at the time of the institu-
tion of the suit, and could not recover, unless it was shown
that the pliantiffs tendered or offered to deliver the entire
quantity of bark, and an offer to deliver the whole before
they had a right to deliver and require it to be accepted.
This instruction was properly refused.   The plaintiffs ad-
mitted an indebtedness of two hundred and thirty-eight
dollars for bark already delivered, and not paid for.   The
plaintiffs had a right to recover this, and yet this instruc-
tion told the jury there could be no recovery.   Again, it
virtually makes the court pass on the oral evidence; and
still more objectionable is it in the fact that there was evi-
dence before the jury to show that the plaintiffs offered to
deliver, and asked the privilege of delivering, the bark,
and had ample bark ready to deliver, and requested the

defendant to comply with its contract, and the defendant failed and refused to do so, which facts, if true, would dispense with any tender of the bark, or offer to deliver it, or the necessity of waiting until the expiration of the year; and yet the instruction, ignoring all this evidence of a prominent or controlling factor in the case, told the jury, they could not find for the plaintiffs without such tender. The questions whether the plaintiffs did make a tender or offer to deliver, and whether there was any one to receive the bark, and whether the defendant refused to accept, and thus had relieved the plaintiffs therefrom, were before the jury.    This instruction told the jury to disregard all such evidence, although it was peculiarly a jury question.

Complaint is also made that the court refused to instruct that the written contract called for a ratable delivery of the bark during ten months from August 1, 1893, to June 1, 1894, and that on the 30th of September, 1893, when the suit was brought, the plaintiffs had no right to insist on the defendant's taking more than ninety five cords, and could not, on account of defendant's refusal to accept the bark, recover more than the loss on ninety five cords. Under my construction of the contract, it did not call for a ratable monthly delivery.    We may just as well say it called for a daily or a weekly delivery.    No periodical delivery is specified in it, and therefore this instruction was a radical misconstruction of that contract; and, the defendant having no right to refuse to accept, his refusal was a cause of action on the 30th of September, 1893.    I see no reason to arrest the judgment or to grant a new trial.    It is useless to discuss the evidence under this head.    I think it plainly justifies the verdict.    Judgment for the plaintiffs affirmed.

*Affirmed.*