# Wheeler *v.* Cleveland, *et al.*

### *Breach of Contract.*

(Decided May 4, 1910.    Rehearing denied Jan. 12, 1911.
54 South. 277.)

1. *Logs and Logging; Sale; Executory Contract.*—The contract in this case stated and examined and held to be an executory contract of sale of the timber, since the provision that any timber not removed from the land within six months after the time for final measurement should revert to the seller, referred only to timber to be paid for at the time of the last payment, thus investing title thereto in the buyer, and hence, did not indicate a contrary intention.

2. *Same; Place for Determining Value.*—Where the subject of the contract is timber on the seller's land, to be cut and removed by the buyer to another place, and there measured and paid for per M. feet, the seller's land is the place for determining the value of the timber within the rule that the measure of damages on rescinding an executory contract of sale for breach by the buyer is the difference between the value of the article at the time of the breach and the agreed price.

3. *Sales; Executory Contract; Breach by Buyer; Seller's Remedy.*—Where the contract of sale is executory, the seller is not confined to an action for the purchase price, but may rescind and sue for the breach, on the failure or refusal of the buyer to comply with his part of the contract.

4. *Same; Damages.*—Where the seller rescinds an executory contract of sale on account of a breach by the buyer, the measure

of damages is the difference between the value of the article at the time of the breach, and the agreed price.

5. *Same: Nominal Damages.*—Where the seller sues for a breach of an executory contract of sale he is entitled to nominal damages only where there is no evidence that the market value of the article at the time of the breach of contract was less than the contract price.

6. *Charge of Court; Instructions.*—It is error to refuse requested instructions merely because too favorable to the other party, on account of the one asking them not therein accepting a gratuitous offer of remittitur of the other party.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by Felix Cleveland and others    against    E. M. Wheeler for breach of contract, Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

The contract made between the parties was that Felix Cleveland and others sell to Wheeler all of the fallen timber and all of the trees the entire tops of which had been broken off by the storm, now lying or standing upon all the lands now owned by the said · party of the first part on certain lands described by government subdivision, said land to be pointed out by the seller. The agreement was to pay $5 per thousand feet, board measure, for said trees net to the seller, payable as the timber is measured in Chickasabogue or Bayou Sara, and to be measured at the expense of the buyer. It is further agreed that it should be measured weekly by public inspector, to be designated by the first party or seller, who shall be satisfactory to both parties. Then follow several names of public inspectors who may be designated from time to time. It is further agreed that the cutting should begin on November 1, 1906, and that there shall be cut and made ready for inspection 50,000 to 60,000 feet on an average each week during any one month, and that the whole timber shall be cut and ready for inspection at the time of ·

payment, on or before March 31, 1907, and that, if any portion remains on the ground on that day, it shall be at once measured and paid for as soon as measured, and shall be removed by the party of the second part not later than six months from that date, and that any timber or trees not moved within that time revert to the party of the first part. Then follows agreement as to how the measurement is to be made, and that the trees covered by the contract shall be all fallen timber and broken trees, that shall make a log 16 feet long with a diameter of 8 inches at the bottom end that are suitable for lumber. The breach alleged is that the defendant did not cut and remove the trees specified in the contract, and had not paid the plaintiffs therefor as requested, although often requested to do so.

The pleas set up that Cleveland and his associates agreed with defendant that the said Cleveland would take and log the timber embraced in the contract, and that said Cleveland did thereafter log a large portion of said timber, and sold and disposed of the logs obtained, and retained the proceeds thereof, and that his logging terminated about April 1, 1907. The third plea is that on the 1st day of November, 1906, Cleveland released and discharged said defendant from any liability or obligation to take or pay for the trees or timber. The fourth plea is that said Cleveland, acting for others, took possession and control of all of the timber and trees mentioned in the contract, and for several months thereafter logged the same, until they had appropriated to themselves nearly all of said timber, including the larger and more valuable and more accessible timber and trees, thus releasing defendant from any obligation under the contract. The fifth plea sets up that plaintiff notified the defendant that he and his associates would log the timber and trees embraced in the contract, that

they did not need the assistance of the defendant and did not care to divide the profits of the enterprise, and that thereafter they did proceed to log said timber until the far greater portion of the logs had been gotten out and retained by the plaintiffs, all of which was done prior to April 1, 1907.

Plaintiffs filed replications to the second, fourth, and fifth pleas separately, setting up that the defendant did not, on the 1st day of November, 1906, do the matters and things alleged in said pleas, but that on December 1, 1906, the defendant had failed to carry out the contract, and stated to the plaintiffs that he was unable to, and would not, carry out the contract, and that because of said action and declaration by the defendant, and for the purpose of saving the timber which had blown down from decay, and to save plaintiffs from loss by reason thereof, they did thereafter cut up and log a large quantity of said fallen timber covered by said contract, to wit, 433,708 feet, board measurement, and placed the same in the waters of Bayou Sara and Chickasabogue for the purpose of preservation and marketing, and have sold part of said timber, and the remainder is still undisposed of in said waters, and the damage alleged in the complaint is the difference between the amount plaintiffs would have sustained, except for their said action in cutting up and saving part of said trees, and the amount that they so saved.

The following is the oral charge of the court excepted to: "Now, if you find for the plaintiffs, the measure of damages would be the difference between the prices they agreed to sell the timber to the defendant, and the profit he made by partially logging the land, with interest from April 1, 1907; but the plaintiffs cannot recover beyond the amount claimed in the complaint, $2,500, with interest from April 1, 1907."

The following charges were refused to the defendant: (6) "The court charges the jury that, if the plaintiffs be entitled to recover for a breach of the contract sued upon, the measure of their damages will be the difference between the contract price agreed to be paid for materials embraced in the contract and the reasonable value of such material at the time that such breach of the contract took place; and, if such value has not been shown to the reasonable satisfaction of the jury, then the plaintiffs' recovery must be limited to nominal damages." (8) "The court charges the jury that, if the defendant has breached the contract sued upon, the burden rests upon the plaintiffs to reasonably satisfy the jury by the evidence of the amount of damages which the plaintiffs have suffered, measured as provided by law, provided the contract has not been rescinded; that the measure of such damages is the difference between the contract price of the materials mentioned in the contract and the fair market value thereof at the time that the breach of such contract took place; and that, if you are not reasonably satisfied from the evidence that such value was less than the contract price, then the plaintiffs' recovery must be limited to nominal damages."

STEVENS & LYONS, for appellant. Under the facts in this case the plaintiff had no right or title in or to the timber, their only right in the premises being to demand and enforce the payment of the agreed purchase price.—*Stringfellow v. Ivey*, 73 Ala. 214; Benj. on Sales, Secs. 1125-6. Plaintiff confuses his rights under an executory and executed contract of sale, and in taking and resale they forget that possession is an essential to the right of resale. A resale is but one method of determining the value of the article sold to arrive

at the difference in the value at the time and the con-
tract price.—24 A. & E. Enc. of Law, pp. 1138 and 1139.
The proof of market value is limited to opinion evidence
as distinguished from the price agreed upon in a con-
crete case.—*Roden v. Brown*, 103 Ala. 329.   The con-
duct of the parties in the circumstances in this case,
and in fact, under any circumstances, may imply a con-
tract or a rescission thereof just as effectually as they
may make one in expressed word.—*McFadden v. Hen-
derson*, 128 Ala. 233; *Cornish v. Suydam*, 99 Ala. 622;
*Florence M. Co. v. Brown*, 121 U. S. 291.   The replica-
tion was a departure from the complaint.—*Winter v.
Mobile Co.*, 54 Ala. 174; *Morris v. Beebe*, 54 Ala. 300;
*Wilson v. The Bank*, 139 Ala. 578; *Ivey C. Co. v. Long*,
139 Ala. 539.   Plaintiffs occupy the inconsistent posi-
tion of taking back the property and handling it ac-
cording to thier judgment, and then suing the defend-
ant for the agreed purchase price, accounting to him for
the profit made under their manipulation.—*Shivers v.
Steiner*, 76 Ala. 559; 24 A. & E. Enc. of Law, 1136. If the
contract sued upon was rescinded, and the new contract
agreed upon was materially changed by virtue of the
transaction which took place between the plaintiffs and
the defendant at the time defendant announced his ina-
bility to log and pay for the timber that would be just as
fatal to plaintiff's case, as if the original contract had
been rescinded in its entirety, and nothing substituted.
—*Prestwood v. Etheridge*, 119 Ala. 78; *Robinson v.
Bullock*, 66 Ala. 554.   The burden is always on the
plaintiff to show what he is entitled to, and failing
therein he can recover only nominal damages.—*Bagby
v. Harris*, 9 Ala. 177; *Taylor v. Howard*, 110 Ala. 468.
Charges 48, 52, 53, 54 and 55, should have been given.
—*Prestwood v. Eldridge*, *supra*.   In a case of this
character the measure of damages is the difference

between the agreed price and the market value of the article.—*Howison v. Oakley,* 118 Ala. 216; *Penn v. Smith,* 93 Ala. 476; *Clements v. Beattie,* 87 Ala. 238.

GAILLARD & MAHORNER, and GREGORY L. & H. T. SMITH, for appellee. Issue was joined on the question of rescission and release and the jury decided against the appellant on these questions. This was final. The replication did not constitute a departure.—54 Ala. 174. It was the duty of the plaintiff to do what he could reasonably and in good faith to reduce the damages.—*Murrell v. Whiting,* 32 Ala. 54; *Strauss v. Mertief,* 64 Ala. 305; *McFadden v. Henderson,* 128 Ala. 221; *L. & N. v. Sullivan T. Co.,* 138 Ala. 395. The burden was upon the appellant to show if he could that appellee could have minimized the damages by selling the timber as it lay on the ground, by showing the market value of the timber.—*Marks v. Miller,* 134 Ala. 351; *Holloway v. Tolbert,* 70 Ala. 393.

ANDERSON, J.—"After the formation of the contract of sale, the question of its effect arises as to when the bargain amounts to an actual sale or when it is a mere executory agreement. The distinction between the two contracts consists in this: That in a bargain and sale the thing which is the subject of the contract becomes the property of the buyer the moment the contract is concluded and without regard to the fact whether the goods be delivered to the buyer or remain in possession of the seller; whereas, in an executory agreement, the goods remain the property of the seller till the contract is executed. This distinction is of importance in two connections: First, as between the parties to the contract, in order to determine upon whom the loss shall fall in case the property is destroyed, for it is plain that if the subject of the sale is lost or destroyed,

the loss must fall upon the party who holds the title; thus if before the transfer has taken place a loss accrues, it falls upon the seller, otherwise upon the buyer; and, second, in order to know what right creditors or subsequent purchasers of one party may acquire as against the other.  An executory contract of sale becomes executed upon delivery and acceptance of the goods in accordance with the contract with intent to pass title."— 24 Am. & Eng. Ency. Law, 1045.  Mr. Benjamin in his work on Sales, in discussing executory or conditional sales of chattels in section 320, says: "Where the buyer is by the contract bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer."  The foregoing is in harmony with the rulings of our own court.—5 Mayfield's Digest, p. 732, § 9, and cases there cited.  These cases must be limited however, to contracts wherein it does not appear that an intention to make the sale absolute and complete, without any regard to the performance of these usual prerequisites, at least as to price and measurement.—*Shealy v. Edwards,* 73 Ala. 175, 49 Am. Rep. 43.

While the contract in question, purports to sell all of the fallen timber on the plaintiff's land, it is not an executed contract of sale that vested the title into the buyer of said timber eo instante.  There were several conditions precedent, and one concurrent with the vestiture of title in the buyer.  He was to commence cutting and removing for inspection to "Bayou Sara" or "Chickasabogue" on November 1st, and to cut and have ready for inspection from 50,000 to 60,000 feet on an average each week, during any one month, and that all

of the timber should be cut and ready for final inspection by March 31, 1907. The contract also provided that so much of the timber as was required to be removed weekly was to be paid for as measured in Chickasabogue or Bayou Sara, and that, what remained on the land on March 31, 1907, was to be paid for when measured. It is manifest, that the vendor did not sell all the fallen timber unconditionally so as to convey the title to all of same, into the buyer, upon the execution of the contract of purchase. The getting out of a certain quantity within a certain time and having it ready for inspection in one of the streams mentioned, was of the essence of the contract, was a condition precedent to the right to the other timber, and under no condition was the title to all of the timber to vest in the buyer until measured, inspected and paid for, either in the streams or upon the land. In other words, the contract required the removal of so much per month or week, and a failure to comply therewith, could have been waived by the vendor or would give him the right to rescind and sue for the breach, if not waived, and a compliance therewith by the vendee, unless waived by the vendor, was a condition precedent to his acquiring the remaining timber at the agreed price. Therefore, in no event could the title to all the timber become vested in the vendee until the 31st of March, when inspected, measured and paid for. Unless, of course, the weekly cuttings and removals left none on the land to be measured and settled for on March 31, 1907, in which event, the contract terminated upon the removal of all the timber and the title became vested in the buyer as inspected and paid for in one of the streams. So much of the contract as provides that the title to the timber shall revert to the vendor, does not refer to all of the timber so as to indicate that the execution of the con-

tract passed the title to the vendee. This clause as to reverting back has reference only to what timber the vendor paid for on March 31st, when the title then became vested in him, but which he failed to remove from the land within six months after the 31st of March, 1907. Ex vi termini, on March 31st he was to pay for all remaining timber when the title was then to vest in him, then if he failed to remove it all off the land within six months that remaining on the land, upon the expiration of said six months, was to revert to the vendor.

The contract being an executory one, the plaintiff was not confined to a suit for the purchase price, but had the right to rescind upon the failure or refusal of the defendant to comply with his part of same and to sue for the breach, and the measure of damages was the difference in the value of the timber at the time of the breach and the price agreed to be paid for same. The value of same on the land would be a proper basis, for while some of it was to be inspected in the streams, it was to be cut and carried there by the defendant, so to fix the value of so much thereof as should have been put in the streams would require a deduction of the cost of getting same there, and it would be as broad as long to base the market value, at the time of the breach, at what it was worth on the land.

As indicated by the oral charge of the trial court there was either a misconception of the contract or of the plaintiff's replication. The complaint, as we understand it, is for a breach of the contract and not merely for the purchase price. Nor do we understand the replication as setting up a changed or modified contract so as to render the defendant liable for bearing any of the burdens incident to the plaintiff's getting

out the timber. It, in effect, is but a joinder of issue of the defendant's pleas of release or rescission by consent, by setting up a refusal or failure to which the plaintiff did not consent and a gratuitous offer of the plaintiff to credit the defendant with any profits derived from getting out the logs, on the damages to which the plaintiff was entitled. It does not seek to charge the defendant with any cost of getting the logs out by the plaintiff but merely changes the claim for damages to what the plaintiff sustained and was entitled to recover, less what they made in getting out the logs, which they probably did and as to which the defendant could not complain. The first part of the oral charge excepted to by the defendant, as to the measure of damages, was error. It charged the defendant with the purchase price of the timber less any profits made by the plaintiff in logging the timber. If not otherwise bad, it treated the contract of sale as an executed one instead of an executory one.

The trial court also erred in refusing charges 6 and 7, requested by the defendant. They assert the law, under the proper issues, and were not abstract as there was no evidence that the market value of the timber was less at the time of the breach than the contract price. There was evidence from which the jury could infer that there was no loss on some of the logs, and the price of those sunken was not binding on the defendant; he had nothing to do with them being in the bottom of the creek. It may be, that owing to the plaintiff's special replication, the charges 6 and 7 were too favorable to the plaintiff, but this did not justify their refusal. They were asked by the defendant, and if they were correct the fact that the defendant did not therein accept the plaintiff's gratuitous offer of remittitur did not justify the refusal of same.

[Ledger Publishing Co. v. Miller.]

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON, MAYFIELD, SAYRE, and EVANS, JJ., concur.