# Jebeles & Colias Confectionery Co. *v.* Stephenson.

## *Assumpsit.*

(Decided Nov. 12, 1912. 60 South. 437.)

1. *Sales; Contract; Repudiation by Buyer; Remedy of Seller.*—Where a buyer repudiates an executory contract of sale and notifies the seller that he will not receive the goods at the time fixed for delivery, the seller may treat the contract as terminated and sue at once for the damages sustained.

2. *Same; Acts Constituting Rescission.*—A letter from the buyer to the seller stating that when the offer to purchase was made, it was understood that the seller would immediately confirm the acceptance by wire, if the offer was accepted; that no wire had been received, and that the buyer would not enter into any contract, and would ask a cancellation of the order, was an unequivocal refusal to perform, and the seller could terminate the contract and sue at once for the damages sustained.

3. *Same; Breach of Contract; Measure of Damages.*—Where a buyer had repudiated his executory contract to purchase flour for future delivery in designated months, before the time of delivery, the seller's measure of damage is the difference between the contract price of the flour and what the seller on the date of the repudiation could sell for future delivery during the months designated.

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Action by J. W. Stephenson against the Jebeles & Colias Confectionery Company for damages for breach of contract. Judgment for plaintiff and defendants appeal. Reversed and remanded.

F. E. BLACKMON, for appellant. No brief reached the Reporter.

LONDON & FITTS, for appellee. No brief reached the Reporter.

PER CURIAM.—This was an action for damages which the appellee (plaintiff in the court below) claims that he sustained by reason of an alleged breach of an alleged contract which the appellee claims that the appellant (defendant in the court below) made with him on January 30, 1911. If the contract was made as alleged, then the appellant contracted to buy from the appellee, and the appellee contracted to sell and deliver to appellant, at Birmingham, Ala., 1,000 barrels of flour, at $5.50 per barrel, to be delivered, as ordered by the appellant, as follows: Two hundred fifty in the month of May, 250 in the month of June, 250 in the month of July, and 250 in the month of August. It seems that on the 30th day of January, 1911, an order for the above flour, to be delivered as above indicated and on the above terms, was signed by the appellant through one Daniels, who was the bookkeeper of appellant, and on said day the acceptance of the order was signed in the name of the appellee by one J. P. McDonald. The appellant is a merchant in Birmingham, and it claims that Daniels had no authority to make the order, and that it was not bound by the contract. McDonald was a broker, but he testified, and so did the appellee, that he had the authority to make and sign the contract on behalf of the

appellee. The order was mailed to the appellee, and on the 11th of February, the appellant received a letter from the appellee, who resides in Little Falls, Minn., and conducts a flour mill there, acknowledging the receipt of the order, and stating that he would be glad to give the order prompt and careful attention. In this letter from appellee to appellant the appellee, after stating that the flour was to be shipped in May, June, July and August, the appellee uses the expression "terms arrival draft with bill of lading attached," which, we presume, the trial judge concluded meant not that the flour was not to be shipped during the above months when ordered by the appellant, but that, when so shipped, it was to be paid for upon the arrival in Birmingham of the drafts for the price of the flour with bills of lading evidencing the shipments attached to such drafts. On the day on which the appellant received the above letter a letter was written by appellant to appellee, in which appellant stated that, when the offer was made to McDonald for the flour, it was understood that the appellee, if the order was accepted, would immediately confirm the fact of the acceptance by wire, that no wire had been received, and that appellant "under the circumstances declines to enter into contract, and will ask that you cancel order." This letter was received by the appellee on February 14th, at which time "Gold Dust" flour, according to the contention of appellee, owing to a decline in wheat, was declining in value. This suit was brought on March 14, 1911, prior to the date on which any of the flour under the alleged contract between the parties was to be delivered by appellee to appellant. The case was tried by the court without the intervention of a jury on October 23, 1911, and judgment was rendered in favor of appellee against the appellant for the sum of $728.26, and this appeal is

prosecuted for the purpose of reversing that judgment.

We have already stated that the flour was to be delivered in Birmingham in May, June, July and August for $5.50 per barrel. The appellee's evidence tended to show that on February 14, 1911, the day on which appellant's letter "declining to enter into contract" was received by appellee, the market price of Gold Dust flour in Birmingham was $4.80 per barrel, or 70 cents per barrel less than the price at which, according to appellee's contention, he had contracted to deliver, in lots of 250 barrels, to appellant in May, June, July, and August. A mathematical calculation shows that in rendering judgment for appellant the court awarded the appellee 70 cents per barrel or $700, with the interest thereon from February 14, 1911, to the date of the judgment. No allowance was made by the court for the cost of the carrying charges on the flour which the appellee would have had to pay if the alleged contract had been completed, and the damages were assessed by the court without regard to or allowance for the fact that the appellee, by being allowed interest, actually received his damages before the date of delivery had arrived. There was no evidence in the case tending to show what the cost of carrying a barrel of flour per month is.

2. There seems to be no conflict among the courts of last resort about the proposition that when a contract of sale of personal property is executory, and the buyer repudiates the contract, and notifies the seller that he will not accept the property when the time for delivery arrives, the seller may treat the contract as at an end, and at once, before the time of delivery arrives, bring an action for the recovery of the damages suffered by him by reason of the breach. In all such cases the facts of the particular case must determine whether the seller, under the circumstances, was justified in treating the

contract as at an end, for, to use the language of the
Supreme Court of the United States in *Smoot's Case*, 15
Wall. 36, 21 L. Ed. 107: "A mere assertion that the
party will be unable or will refuse to perform his con-
tract is not sufficient. It must be a distinct and un-
equivocal absolute refusal to perform the promise, and
must be treated and acted upon as such by the party to
whom the promise was made; for, if he afterwards con-
tinue to urge or demand a compliance with the contract,
it is plain that he does not understand it to be at an
end." In the instant case there were facts from which
the court, sitting as a jury, had the right to conclude
that there was a contract, that there was a distinct and
unequivocal absolute refusal to perform the promise,
and that the appellee accepted such refusal as putting
an end to the contract. There was therefore, under the
above conclusion of the court, no necessity for the ap-
pellee, as a condition precedent to a right of recovery, to
tender any flour to the appellant under the terms of the
contract.

3. What, then, was the measure by which the ap-
pellee's damages, if any, should have been estimated?
He had agreed to deliver flour in May, June, July, and
August at $5.50 per barrel. He offered evidence tending
to show that the same flour on February 14, 1911, the
day on which he claims that the contract was repudiated
by appellant, was worth $4.80 per barrel, and he claims,
and was allowed, the difference between what spot flour
on February 14, 1911, was selling at in Birmingham and
the $5.50 per barrel which he would have received from
appellant in May, June, July, and August if appellant
had not breached its contract. Did the court adopt,
under the circumstances of this case, the proper meas-
ure of damages? Appellee claims that the court in
awarding damages adopted the proper measure for their

determination, and in support of his contention cites the following authorities, which we will examine and discuss in detail: *Scruggs & Echols v. Riddle,* 171 Ala. 350, 54 South. 641; *Gate City Cotton Mills v. Roseman H. Co.,* 159 Ala. 414, 49 South. 228; *Wheeler v. Cleveland,* 170 Ala. 426, 54 South. 277; *Davis v. Adams,* 18 Ala. 264; *West v. Cunningham,* 9 Port. 104, 33 Am. Dec. 300; *Roehm v. Horse,* 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; *Pancake v. George Campbell Co.,* 44 W. Va. 82, 28 S. E. 719; Decennial Digest, Sales, 374, 384; *Southern Cotton Oil Co. v. Heflin,* 99 Fed. 339, 39 C. C. A. 546; Benjamin on Sales (Am. Ed. of 1888) with Bennett's Am. Notes, 710, 716; 3 Sutherland on Damages (Ed. 1903) § 648. The question discussed in *Scruggs & Echols v. Riddle, supra,* and actually determined by the Supreme Court in that case, has no applicability whatever to the instant case. In that case the seller agreed to deliver to the buyers, at Decatur, Ala., 1,000 barrels of flour at $4.55 in cotton sacks or $4.65 in wood, to be shipped on the order of the buyer, within 5 months, with the understanding that on all flour not ordered out by the buyer within 30 days the buyer should on each barrel pay 5 cents additional carrying charges for each 30 days or fraction thereof until the contract was completed. The five months referred to ended on March 11, 1906, and none of the flour had been ordered out or shipped. The Supreme Court held that the measure of the seller's damages was the cost of carrying the flour for four months at 5 cents per barrel, and the difference between the market value of the flour in Decatur on that day and the contract price. The Supreme Court, therefore, in that case, simply applied the well-known rule usually applicable in such cases, viz.: That the damages suffered by the seller were represented by the difference between the market value of the property at the time and

place fixed in the contract for the delivery and the price agreed to be paid at that time.

In *Gate City Cotton Mills v. Roseman Hosiery Mills, supra,* which was an action for the damages sustained by the seller of hosiery yarns by reason of the breach by the buyer of the yarns of an executory contract of sale, the trial court, at the written request of the plaintiff (the seller), charged the jury that the measure of the plaintiff's damages was the difference between the cost of the manufactured articles and the contract price. The defendant contended, on the other hand, that such was not the proper measure of damages, but that the true measrue of such damages was the difference between the contract price and the market value of the articles at the time of the breach of the contract. The Supreme Court held that the contention of the defendant was the proper one, and allowed that measure to prevail for which the defendant contended. The identical situation prevailed in *Wheeler v. Cleveland, supra.* In both the above cases the court held that the plaintiff's measure of damages was the difference between. the contract price and the market value at the time of the breach of the contract, but that rule was, in each case, contended for by the defendant, and that rule was not, so far as the record in either case discloses, subject to any modification by reason of the peculiar facts in either case. In *Davis v. Adams, supra,* in which the above rule was also announced, the buyer refused to accept the cotton, the subject of the contract of sale, when tendered by the seller at the time and place fixed by the contract for the delivery, and, of course, the rule in its fullness was applicable to the facts of that case. In *West v. Cunningham, supra,* the facts were that the buyer agreed to take immediately from the seller a lot of oranges then on board a vessel at an agreed price. The buyer refused

or failed to remove the oranges from the vessel, and the buyer was notified by the seller that, if he did not take away the oranges in accordance with his contract, they would be sold at his risk. The buyer refused or failed to remove the oranges, and they were thereupon sold at his risk. The court held that, "if the purchaser refuses to comply with his contract, the seller need not continue ready to deliver the article. He may sell it, and sue immediately for the damages he has sustained, but a resale is not necessary to fix the liability of the purchaser," as the difference between the price contracted to be paid and the market value at the time of the breach of the contract is the true measure of damages. As applicable to the facts of that case, the above was, of course, the law. In the case of *Pancake v. George Campbell Co., supra,* the question as to the proper rule for the admeasurement of the plaintiff's damages is not even discussed. The only real question determined in that case was that the plaintiff when the purchaser notified the seller of certain bark, which was to be delivered in certain monthly installments, that he would not receive such bark, the seller had the right to at once treat the contract as at an end, and at once bring his suit for the recovery of the damages suffered by him on account of the breach by the buyer of such contract.

The cases referred to in Decennial Digest, supra, are cases announcing the doctrine declared in *Pancake v. George Campbell Co., supra,* and refer in no way to the proper measure of damages in such cases. The rule which we think Mr. Sutherland in his work on Damages regards as the true rule in such cases (see 3 Sutherland on Damages [3d Ed.] note 2, § 6) is that: "In such cases the damages are not the difference between the contract price and the market value on the day the action is brought. It is the duty of the jury to assess them,

having regard to and making allowance for the fact
that the plaintiff is receiving his damages before the date
of delivery has arrived." The rule in such cases, as
declared by Mr. Benjamin, in his work on Sales (see
Benjamin on Sales [7th Ed.] Bennett's 1899), is "the
sum of the differences between the contract price and
the market price at the several periods for delivery, al-
though the last period fixed for delivery had not ar-
rived when the action was brought or the cause tried.
The jury were to estimate, as best they could, the prob-
able difference in respect of the future deliveries." In
2 Benjamin on Sales (American Notes by Charles L.
Corbin) § 1117, p. 973, the rule is stated as follows: "The
date at which the contract is considered to have been
broken is that at which the goods were to have been
delivered, not that at which the buyer may give notice
that he intends to break the contract and to refuse ac-
cepting the goods." In *Roehm v. Horst, supra,* which
was a suit for a breach of a contract involving a future
delivery of hops, the Circuit Court of Appeals (see
*Roehm v. Horst et al.,* 91 Fed. 345, 33 C. C. A. 550) de-
clared that in such cases "the damages of the plaintiff
should be assessed upon the same principle—that of the
gain there was to him in the contract at the time. The
best means of finding this gain was by learning the dif-
ference between the price for hops deliverable according
to the terms of the contract and the price at which re-
sponsible parties in the market were willing to assume
similar liabilities." This case was appealed to the Su-
preme Court of the United States, and that court,
through Fuller, C. J., said: "In this case plaintiffs
showed at what prices they could have made subcon-
tracts for forward deliveries according to the contracts
in suit, and the difference between the prices fixed by
the contracts sued on and those were correctly allowed."

In the case of *Southern Cotton Oil Co. v. Heflin, supra,* the only question was whether the plaintiff should be allowed the difference between the cost of the manufacture of an article which had been tendered under the contract and the contract price, or should be allowed the difference between the market price and the contract price at the time of the tender, and it was held that the true measure of damages was the difference between the market price and the contract price at the time of the tender. In that case the Circuit Court of Appeals of the Fifth Circuit, through Shelby, Circuit Judge, among other things said, after quoting with approval the subdivision quoted by us from Benjamin on Sales: "In applying rules as to the measure of damages courts must have regard to the particular facts of the case in question. Each case is sui generis. The court should not attempt to formulate rules in one case to govern all possible cases."

In the instant case the court has allowed the plaintiff the difference between the market value of flour in Birmingham on February 14, 1911, the day on which, according to the plaintiff's contention, the defendant breached the contract, and the contract price of flour, although none of the flour could have been forced upon the defendant under the terms of the alleged contract until the last day of the following May, and then only one-fourth of such flour. Suppose, as an illustration, the contract had called for a delivery of flour in the year 1914, instead of in May, June, July, and August, 1911. Suppose on the 14th day of February, 1911, the defendant had notified the plaintiff that the flour would not be received by it. Could it be said that the true measure of damages was the difference between the contract price and the market value of the flour on February 14, 1911? We think not, and we do not think that

such a measure of damages would be seriously contended for. It seems to us that the true measure of the plaintiff's damages in this case, if he is entitled to any damages, is the difference between the contract price of the flour and what on February 14, 1911, the defendant could have sold a similar amount and grade of flour deliverable in May, June, July, and August, 1911, in Birmingham, Ala. We are therefore of the opinion that in this case the trial court committed an error for which this cause must be reversed.—*Roehm v. Horst, supra; Southern Cotton Oil Co. v. Heflin, supra; Veitch v. W. U. Tel. Co., infra,* 59 South. 352.

Reversed and remanded.

NOTE.—The foregoing opinion was prepared by Judge DE GRAFFENRIED, while he was a judge of this court, and is adopted by the court.