(94 South. 268)

**STEELE BY-PRODUCTS CO. v. McGEE & COWART.  (6 Div. 59.)**

(Court of Appeals of Alabama.  Oct. 31, 1922.)

**1. Sales 377—Complaint alleging buyer's refusal to accept goods held demurrable for not alleging refusal while contract was binding.**

In sellers' action for breach of contract, the complaint, alleging that plaintiffs were ready, willing, and able to perform it according to its terms, but that defendant "breached said agreement by refusing to accept" the commodity sold, held demurrable as not alleging that such refusal occurred while the contract was binding on defendant, though sufficient to show plaintiffs' ability to comply therewith within the time specified.

**2. Sales 370—Buyer's refusal, or notice of intended refusal, to accept delivery, authorizes seller to treat contract as breached.**

The buyer's refusal to accept the goods on tender of delivery during the month agreed, or notice to the seller, at any time after execution of the contract and before the final date of delivery has expired, that he will not accept them when the time for delivery arrives, constitutes such refusal as authorizes the seller to treat the contract as breached.

**3. Contracts 335(1)—Plaintiff, in action for breach, must aver ability, readiness, and willingness to perform.**

To recover for breach of a contract containing mutual and dependent covenants or stipulations, plaintiff must aver and prove his ability, readiness, and willingness to perform, as well as defendant's failure to perform.

**4. Sales 370—Buyer's refusal to perform must be unequivocal and treated as such by seller to justify him in treating contract as ended.**

Whether a seller, on the buyer's notice of his intended refusal to accept delivery, is justified in treating the contract as ended, must be determined by the facts of each case, a mere assertion that the buyer will be unable or will refuse to perform not being sufficient, as there must be a distinct, unequivocal, and absolute refusal treated and acted on as such by the seller.

**5. Appeal and error 1170(3)—Overruling demurrers to complaint not alleging buyer's refusal to accept delivery while contract was binding held not prejudicial to buyer.**

In an action for a buyer's breach of contract by refusal to accept delivery, the overruling of a demurrer to a count of the complaint as not alleging that such refusal to accept occurred while the contract was binding on defendant did not injuriously affect its substantial rights under Supreme Court Rule 45 (175 Ala. xxi, 61 South. ix), where it was shown that defendant notified plaintiff before the time for delivery to "consider the contract canceled," and that plaintiff considered and acted on such notice as an unequivocal refusal to comply with the contract.

**6. Sales 62—Seller held entitled to bring separate suit for buyer's refusal to accept final monthly delivery.**

A contract for the sale of a quantity of bean meal of a certain grade, for delivery during November and December, held divisible, so as to permit a suit for the buyer's breach of its contract to accept the December delivery, even if the seller breached its contract as to the November delivery, though executed as of one date and calling for the delivery of one kind of commodity, where the price thereof was different for each month and the freight charges and war tax were to be paid by the seller on the November contract and by the buyer on the December contract, the buyer's remedy for the seller's breach as to the November delivery being by way of counterclaim or separate action.

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Set-off and counterclaim ☞33(1)—Buyer sued for breach held entitled to set off shortages at destination of cars delivered under prior contracts; "shippers load and count bill of lading."**

In an action for a buyer's breach of contract by refusal to accept delivery, defendant could set off damages for shortages found on inspection at destination of cars shipped to it by plaintiff under prior contracts "f. o. b." point of shipment, "terms A. D. B. L. attached, payable on arrival and inspection of car," irrespective of the effect of the execution of a "shippers load and count bill of lading," under which the carrier does not acknowledge to have received on board any particular amount or character of goods, the letters "A. D. B. L.," in connection with other words used therewith, meaning that the buyer was under no obligation to pay the price by taking up the draft until after arrival and inspection of the goods at destination.

**8. Sales ☞382—Evidence of cost of beans and of labor in manufacture of meal held inadmissible in action for buyer's refusal to accept delivery.**

In seller's action for breach of a contract of sale of bean meal of a certain grade, evidence of the cost of the beans and of the labor incurred in the manufacture of the meal was illegal; the contract imposing on the seller no duty to manufacture the meal.

**9. Sales ☞384(2)—Measure of damages for buyer's repudiation before time for delivery stated.**

The measure of damages for the buyer's repudiation of a contract before delivery or the time for delivery is the difference between the contract price and the market value of the same quality of commodity at the point of shipment at the time of such repudiation.

Appeal from Circuit Court, Jefferson County; Richard V. Evans, Judge.

Action by McGee & Cowart against the Steele By-Products Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

James H. Willis, of Birmingham, for appellant.

Unless a notification, relied upon as constituting an anticipatory breach, is in terms an absolute, unequivocal, and unconditional refusal to perform in any event, no anticipatory breach is shown. 23 R. C. L. 1409; Elliott on Contr. § 2032; 13 C. J. 654; 2 Mechem on Sales, § 1087; 6 Ala. App. 103, 60 South. 437; 144 Mich. 278, 107 N. W. 889; 67 Vt. 158, 31 Atl. 144; 117 U. S. 490, 6 Sup. Ct. 850, 29 L. Ed. 984; 182 Pa. 427, 38 Atl. 510. Though a refusal to perform may be absolute and unconditional, unless the party against whom the declaration is made affirmatively elects to adopt it as a breach, it cannot subsequently be relied upon as such. 6 R. C. L. 1025; 32 Cal.

App. 45, 162 Pac. 125; 113 Ga. 975, 39 S. E. 410; 25 Ga. App. 613, 103 S. E. 839; 76 Conn. 27, 55 Atl. 599; 4 Misc. Rep. 433, 24 N. Y. Supp. 116; 116 Tenn. 141, 92 S. W. 760; (D. C.) 227 Fed. 193; 20 Ga. App. 660, 93 S. E. 532. When the seller relies for recovery upon a premature refusal of the buyer to receive and pay for goods, his pleading must show refusal occurred during period of buyer's duty to receive, and aver that he is ready, willing, and able to perform. 177 Ala. 596, 58 South. 989. The rule that delivery to carrier is delivery to buyer is only presumptive, and may be rebutted; passage of title is a matter of intention of the parties. 13 Ala. App. 442, 69 South. 228; 8 Ala. App. 487, 62 South. 537; 136 Ala. 261, 33 South. 873, 96 Am. St. Rep. 25; 188 Ala. 232, 66 South. 479; 196 Ala. 422, 72 South. 54; 16 Ala. App. 278, 77 South. 428; 78 South. 321; 40 Cal. App. 696, 181 Pac. 811; 138 Cal. 134, 70 Pac. 1080.

Joseph T. Collins, Jr., of Birmingham, for appellee.

The court did not err in overruling defendant's demurrer to the amended complaint. 177 Ala. 596, 58 South. 989. The contract was divisible. 147 Ala. 581, 41 South. 806. The court properly charged that, if the jury believed that there was no shortage in the two cars when delivered by plaintiff to the common carrier at Arlington, Ga., then they should not allow defendant any sum under its counterclaim. 13 Ala. App. 537, 69 South. 331; 6 Ala. App. 475, 60 South. 598. The measure of damages was the difference in the market value at Arlington, Ga., at the time of repudiation of contract, and the contract price. 6 Ala. App. 103, 60 South. 437.

MERRITT, J. [1, 2] The demurrers to count 3 of the complaint should have been sustained.

While the allegation that the plaintiffs "were ready, willing and able to perform said contract according to the terms thereof," was sufficient to show ability to comply with the contract within the time specified by the terms thereof, on the part of the plaintiff, yet the breach thereof, charged to the defendant, that it "breached said agreement by refusing to accept" the commodity named in the agreement, is not an allegation that the refusal to accept occurred while the contract was binding upon the defendant. Under the terms of the contract, as set out in the complaint, the defendant, who was the buyer, was bound to accept the commodity during the month of December, and a refusal to accept during the month of delivery, delivery being tendered, or an absolute repudiation of the contract, and notification to the seller that he will not accept the prop-

erty when the time for delivery arrives, being made any time after the execution of the contract and before the final date of delivery had expired, would have constituted such refusal as would have been a breach of the contract on the part of the buyer, and would have authorized the seller to treat the contract as breached. Jebeles & Colias Confectionery Co. v. Stephenson, 6 Ala. App. 103, 60 South. 437.

[3] "A party seeking to recover as for the breach of a contract containing mutual and dependent covenants or stipulations must aver and prove that he was able, ready, and willing to perform, as well as that defendant failed to perform on his part." Duffey v. Southern Mfg. Co. (Ala. Sup.) 92 South. 545;[1] Moss v. King, 186 Ala. 475, 65 South. 180; Terrell v. Nelson, 177 Ala. 596, 58 South. 989.

[4, 5] It would appear, however, that under Supreme Court Rule 45 (175 Ala. xxi, 61 South. ix), and numerous decisions of that court construing this rule, that, as applied to the facts in the instant case, the ruling of the trial court in respect to the demurrers did not injuriously affect any substantial rights of the party complaining. Jackson v. Vaughn, 204 Ala. 543, 86 South. 469; Best Park & Am. Co. v. Rollins, 192 Ala. 534, 68 South. 417, Ann. Cas. 1917D, 929; Vance v. Morgan, 198 Ala. 149, 73 South. 406; Clinton Mining Co. v. Bradford, 200 Ala. 308, 76 South. 74; So. Ry. Co. v. Harris, 202 Ala. 263, 80 South. 101; Ex parte Minor, 203 Ala. 481, 83 South. 475, 10 A. L. R. 687.

The suit was for damages claimed by the seller growing out of an alleged breach of a contract, whereby the appellant (buyer) agreed to buy from appellee (seller) 150 tons velvet bean meal of a certain grade, for delivery during the months of November and December. The question of the November delivery of 50 tons was eliminated by amendment of the complaint, the trial being had on count three, which only claimed damages for failure of the buyer to accept the December delivery; the seller alleging they were ready, willing, and able to make delivery during the month of December of the meal according to the terms of the contract.

It is a sound proposition of law that if the buyer notified the seller that they would not receive or accept the meal in case they delivered it, and as stated before this refusal was within the time the seller had to deliver under the terms of the contract, this would be a breach of the contract on the part of the buyer, and the seller would be excused from delivering the meal as a condition precedent to a recovery. Terrell v. Nelson, supra. In all such cases the facts of the particular case must determine whether the seller, under the circumstances, was justified as treating the contract as at an end,

for, to use the language of the Supreme Court of the United States in Smoot's Case, 15 Wall. 36, 21 L. Ed. 107:

"A mere assertion that the party will be unable, or will refuse to perform his contract, is not sufficient; it must be a distinct and unequivocal absolute refusal to perform the promise, and must be treated and acted upon as such by the party to whom the promise was made; for if he afterwards continue to urge or demand a compliance with the contract, it is plain that he does not understand it to be at an end." Jebeles & Colias Confectionery Co. v. Stephenson, supra.

In the instant case, the appellant's notation on the appellee's letter of November 28th that, "November meal automatically has canceled itself and as for December meal we will not honor your drafts or handle your meal under any consideration as you won't even adjust past shipments. Consider the contract canceled and the incident closed. Save your postage," was such an unequivocal and absolute refusal to comply with its promise on the part of the appellant, and the evidence shows was so considered and acted upon as such by the appellee. It thus appears that the refusal to accept was during the time when such duty rested upon the defendant.

[6] There was no error in the ruling of the trial court that the contract was divisible, and that on failure to comply with the provisions as to the December meal suit could be maintained for such breach. While the execution of the contract appears of one date, and calls for the delivery of one kind of commodity, viz. velvet bean meal, yet the months of delivery are different, the price of the commodity is different for each month, and the freight charges and war tax are to be paid by the seller on the November contract, while the freight charges and war tax were to be paid by the buyer on the December contract. It thus appears that the commodity was to be delivered in installments, and the price was proportioned to and payable on the several installments. If the plaintiff breached its November delivery, to the defendant's damage, it has its recourse by way of counterclaim in this suit or by way of separate action. Ollinger & Bruce Dry Dock Co. v. James Gibbony & Co., 202 Ala. 516, 81 South. 18; J. C. Lysle Milling Co. v. North Alabama Grocery Co., 201 Ala. 222, 77 South. 748; Rock Island Sash & Door Works v. Moore-Handley Hardware Co., 147 Ala. 581, 41 South. 806; Sims v. Ala. Brewing Co., 132 Ala. 311, 31 South. 35; Johnson & Thornton v. Allen & Jemison, 78 Ala. 387, 56 Am. Rep. 34.

[7] Appellant, under its plea of set-off or counterclaim, claimed damages for shortages in two cars, one of beans and the other of meal, shipped by appellee to the appellant under prior contracts. The two contracts

---

[1] 207 Ala. 369.

under which these alleged short cars were shipped contained the following provisions bearing upon the question of the passage of title to the property shipped:

"Price $2.75 per bushel f. o. b. Arlington, Ga. Terms A. D. B. L. attached, payable on arrival and inspection of car."

Both of these cars were shipped from Arlington, Ga., consigned to appellant at Memphis; appellee drawing on appellant at Birmingham for the amount as shown by bill of lading, which draft was paid before the arrival and inspection of the cars at Memphis. The letters A. D. B. L., contained in the contract, were shown by the testimony to mean "arrival draft, bill lading attached," and taken in connection with the other words used therewith meant that the buyer was to be under no obligation to pay the price by taking up the draft until after the arrival of the goods at destination and the inspection thereof. The testimony further showed that the seller took out in these shipments, in the name of the buyer, a bill of lading containing what is known as a "shippers load and count bill of lading," under which the carrier does not acknowledge to have received on board any particular amount or character of goods. The testimony for the appellant tended to show that there was a shortage as found by inspection on arrival of the two cars at Memphis, and, as stated before, claimed the amount of such shortage by way of set-off. The testimony for the appellee tended to show that there was no shortage at the point of delivery, viz. Arlington, Ga. Appellant contends that upon delivery by it to the carrier of the commodity at Arlington, Ga., and bill of lading taken in the name of the buyer, the title to the property at such place passed out of the seller and into the buyer, and that the railroad company, under these facts, was acting as the agent of the consignee and not of the consignor. This contention on the part of the appellee was sustained by the trial court, as is evidenced by the giving of the following written charge for the appellee, which is made the basis of an assignment of error. The charge reads as follows:

"If the jury believe from the evidence that there was no shortage in the two cars for which shortage is claimed by defendants in its counterclaim when said cars were delivered by plaintiffs to the common carrier at Arlington, Ga., then they should not allow defendants any sum under said counterclaim."

Aside from whatever effect a "shippers load and count bill of lading" may have in this case, it is plain that under the terms of the contract the place of delivery to the defendant was at Memphis, and that the trial court was in error in giving the above written charge. The recent case of Armstrong v. Wilcox (Ala. Sup.) 92 South. 645,[2] appears to be decisive of this proposition. In the Armstrong Case the bill of lading was taken in the name of the buyer, but it was held where the delivery was f. o. b. Terea Cia, Fla., the title did not pass to the buyer until arrival at Montgomery, where seller draws with bill of lading attached, it being stipulated in the agreement that payment was to be made in Montgomery on arrival of car. In the instant case payment was to be made "on arrival and inspection of car," and delivery was made f. o. b. Arlington, Ga., consigned to buyer, with draft and bill of lading attached, just as in the Armstrong Case, supra, with the further right in the case at bar that the draft was payable on arrival and inspection of the car. If there was a shortage in the cars on arrival at Memphis, the point of destination, under the terms of the contract, the amount of such shortage was a proper subject of set-off against the demand of the plaintiff, as under the contract title did not pass to the buyer until arrival at Memphis.

[8] The trial court adopted the wrong measure of damage in its charge to the jury in this case. The contract imposed upon the plaintiff no duty to manufacture the meal, consequently evidence of the cost of beans and labor incurred in the manufacture was illegal. The plaintiff's obligation under the contract was merely to deliver meal of a certain grade. They may have gone into the market and purchased it or had it given to them.

[9] If the defendant repudiated the contract, the plaintiff is entitled to recover the value of the contract to him at the time of such repudiation, and in this case, where the evidence shows the repudiation was before the delivery, or the time for the delivery of the commodity named in the contract, the measure of damage is the difference between the contract price of velvet bean meal, viz. $30 per ton, and the market value of meal of the quality called for by the contract price of November 30, 1920, at Arlington, Ga., this amount less, however, the value of the shortage shown by the evidence to have existed in the two cars of beans at Memphis, shipped under prior contracts. Jebeles & Colias v. Stephenson, supra.

It follows that the judgment must be reversed, and the cause remanded.

Reversed and remanded.

---

[2] 207 Ala. 390.